UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

IN RE PFIZER INC. ERISA LITIGATION

No. 04 Civ. 10071 (LTS)(JFE)

--------------------------------------------------------x

**OPINION AND ORDER**

APPEARANCES:

KELLER ROHRBACK L.L.P.
   By:  T. David Copley, Esq.
       Lynn Lincoln Sarko, Esq.
       Juli E. Farris, Esq.
       Elizabeth A. Leland, Esq.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052

       - and -

COHEN MILSTEIN SELLERS
& TOLL, PLLC
   By:  Bruce F. Rinaldi, Esq.
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC 20005-3964

   By:  Catherine A. Torell, Esq.
150 East 51st Street, 30th Floor
New York, NY 10022

*Lead ERISA Attorneys for Plaintiffs*

CADWALADER, WICKERSHAM
& TAFT LLP
   By:  Gregory A. Markel, Esq.
       Jason M. Halper, Esq.
       Erika B. Engelson, Esq.
One World Financial Center
New York, NY  10281

*Attorneys for Defendants*

LAURA TAYLOR SWAIN, United States District Judge

This putative class action is brought pursuant to §§ 502(a)(2) and (a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (a)(3), on behalf of current or former participants ("Plaintiffs") in retirement savings plans (the "Plans") sponsored by Pfizer Inc. ("Pfizer") and the Pharmacia Corporation ("Pharmacia").  Named as defendants are Pfizer, Pharmacia, and one hundred and two individuals (sixty-two named defendants and forty unnamed defendants, sued as "John Does") who are current and former members of the companies' boards of directors and/or the committees responsible for administering these retirement plans (the "Individual Defendants") (collectively, "Defendants"). Plaintiffs allege that Defendants either knew or should have known that Pfizer and Pharmacia were engaging in marketing and communications activities concerning two drugs, Celebrex and Bextra, that artificially inflated the value of Pfizer and Pharmacia securities and rendered them imprudent and inappropriate investments, and that Pfizer's stock price fell after certain revelations regarding these two drugs.  Plaintiffs assert that Defendants are liable to the Plans under ERISA for losses suffered by the Plans on their holdings of Pfizer and Pharmacia stock.  The Court has jurisdiction of Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).

Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and, pursuant to Rule 12(b)(1), to dismiss all claims regarding certain plans covering employees in Puerto Rico.  For the reasons that follow, Defendants' motion is granted in part and denied in part.

<div align="center">BACKGROUND</div>

The following facts are drawn from the Consolidated Class Action Complaint ("CCAC") and the Consolidated Amended Class Action Complaint ("Complaint"), which are

identical in all respects except for the addition of a named plaintiff in paragraph thirty-five of the Complaint and the resulting difference in paragraph numbers.[1]  The Court takes these facts as true for purposes of this motion to dismiss.

*The Parties*

Plaintiffs are current or former participants in defined contribution plans sponsored by Pfizer, Pharmacia, or Warner-Lambert.[2]  The four named plaintiffs, Peter F. Muffie, Alan Berlow, David C. Harber, and Vincent Romano, are current and past participants in the Pfizer and Pharmacia plans.  (Compl. ¶¶ 32-35).  The proposed class consists of all persons, other than the Defendants, who were participants in or beneficiaries of any of the relevant plans at any time between August 29, 2000 through and including December 9, 2005 (the "Class Period").  (Compl. ¶¶ 10, 11, 19.)

The Complaint identifies and refers to five general groupings of Defendants.  The first group is the Entity Defendants, Pfizer and Pharmacia (the "Entity Defendants" or "Pfizer" or

---

[1]     Accordingly, after paragraph thirty-five, each numbered paragraph in the Complaint is one number higher than its counterpart in the CCAC.

[2]     Pfizer sponsored and maintained certain of the plans (the "Pfizer Plans"), during the Class Period.  (Compl. ¶ 2.)  Pharmacia sponsored and maintained certain plans ("the Pharmacia Plans") during the Class Period prior to Pfizer's acquisition of Pharmacia in 2003 and the subsequent merger of the Pharmacia Plans into the Pfizer Plans. (Compl. ¶ 3.)  On June 19, 2000, Pfizer acquired the Warner-Lambert Company ("Warner-Lambert") and took over two Warner-Lambert Plans, and on that same date all Warner-Lambert common stock held in these two Plans was automatically exchanged for Pfizer common stock.  (Compl. ¶ 139.)  Pfizer sponsored and maintained the Warner-Lambert Savings and Stock Plan (U.S.) from June 2000 through August 2003, the Warner-Lambert Savings and Stock Plan for Colleagues in Puerto Rico from June 2000 through April 2003, and the Searle Puerto Rico Savings Plan 1165(e) from April 2003 to the present.  (Compl. ¶ 49.)

"Pharmacia").  (Compl. ¶¶ 36, 52.)  The second group, the Director Defendants, is comprised of

Pfizer's Board of Directors and Pharmacia's Board of Directors during the Class Period

(collectively the "Director Defendants").  (Compl.  ¶¶ 18, 24.)  The third group, the Committee

Defendants, consists of the Pfizer Plan Committee and its members, as well as the Pharmacia

employee benefit plan administrative and/or investment committees and their members, during the

Class Period  (the "Committee Defendants").   (Compl. ¶¶ 21, 26, 27.)  The fourth and fifth groups

are, respectively, the Pfizer Defendants and Pharmacia Defendants.  The Pfizer Defendants

include Pfizer, the Pfizer Director Defendants, the Pfizer Committee Defendants, and the Pfizer

Leadership Team.   (Compl. ¶¶ 16, 17.)  The Pharmacia Defendants are comprised of Pharmacia,

the Pharmacia Director Defendants, and the Pharmacia Committee Defendants.  (Compl.  ¶ 23.)

*The Plans*

"The Plans at issue are all 'employee pension benefit plan[s]' within the meaning

of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A)."  (Compl.  ¶ 69.)  These Plans include "eligible

individual account plan[s]" ("EIAPs") as defined in Section 407(d)(3) of ERISA,  29 U.S.C. §

1107(d)(3), as well as "qualified cash or deferred arrangement[s]" under section 401(k) of the

Internal Revenue Code.  26 U.S.C. § 401(k); (Compl. ¶ 69.)  Each of the Plans was established

and maintained through a written instrument, and each featured investment in Pfizer and/or

Pharmacia securities ("Company Stock") through participant contributions, an employer matching

component, or both.  (Compl. ¶¶ 70, 71; see also id. ¶¶ 81, 82, 102, 103, 113, 132, 146, 173, 190,

191, 201, 202, 217 (describing the investments the plans offered, and noting that each plan offered

investment in a Company Stock fund); id. ¶¶ 83, 103, 115, 134, 147, 174, 192, 202 (stating that

employer contributions were invested in Company Stock).) None of the plans was designed to invest primarily in employer securities, such as in an employee stock ownership plan ("ESOP"). (Compl. ¶ 73.) Many of the Plans offered an investment option in a fund that was invested primarily or generally in Company Stock ("Company Stock Funds"). (See Compl. ¶ 14 ("'Company Stock Fund(s)' means an investment that invests primarily in Company Stock."); see e.g., ¶ 81 (Pfizer Savings and Investment Plan ("PSIP") included Company Stock Fund option); ¶ 103 (Pfizer Savings and Investment Plan for Employees Resident in Puerto Rico ("PSIP-PR") included Company Stock Fund option); ¶ 113 (Pfizer Savings Plan ("PSP") included Company Stock and Company Stock Fund options); ¶ 132 (Pfizer Savings Plan for Employees Resident in Puerto Rico ("PSP-PR") included Company Stock Fund option); ¶¶ 139, 146, 148 (relating to Warner-Lambert Savings and Stock Plan ("W-L Plan") and Warner-Lambert Savings and Stock Plan for Colleagues in Puerto Rico ("W-L PR Plan") Employee Stock Funds and Company Stock Funds); ¶ 173 (Pfizer Common Stock Fund or Common Stock Investment Account); in Pharmacia Savings Plan ¶ 174 (Pharmacia Savings Plan Company Matching Account); ¶¶ 185, 190 (Searle Puerto Rico Savings Plan ("Searle Plan") Company Stock Fund); ¶¶ 200 -201 (Pharmacia & Upjohn Savings Plan Company Stock Fund ("P & U Common Stock Fund")); ¶¶ 206-208 (Company Stock Fund for Pharmacia common stock); ¶¶ 217-218 (Searle/Monsanto Puerto Rico Plan Company Stock investments). Even those plans that purported to qualify as ESOPs failed to satisfy all of the statutory and regulatory mandates with respect to plan design and/or operation. (See, e.g., Compl. ¶ 198 ("The Pharmacia Savings Plan did not purport to be an ESOP, but claimed to have an ESOP component. However, [it] . . . was not intended to invest primarily in

Company Stock and also failed to comply, with the multiple statutory and regulatory requirements

necessary to qualify as a true ESOP.")

*Allegations of Misconduct*

Plaintiffs allege that Defendants were aware that investment in Company Stock

was imprudent and that the price of Pfizer's stock was artificially high because two of Pfizer's

drugs, Celebrex and Bextra, presented cardiovascular and gastrointestinal risks of which the

market was unaware.  Plaintiffs cite medical studies conducted between 1999 and 2006 that

allegedly revealed significant risks posed by Celebrex and Bextra.  (Compl. ¶¶ 329-382.)

Plaintiffs further allege that Defendants did not publicly disclose the results of many of these

studies until years later and that, in some instances, they deliberately concealed or presented

misleading information about the data.  (See e.g., Compl. ¶¶ 331, 338-339, 346, 359, 368, 374-375

(describing various studies conducted on Bextra and Celebrex and alleging that Defendants failed

to disclose their results).)  On December 10, 2004,  the Federal Food and Drug Administration

(the "FDA"), approved a new label for Bextra with a "black box" warning concerning

cardiovascular risks for certain patients and, on December 17, 2004, the Company's stock

"dropped precipitously, losing over 11% of its value."[3]  (Compl. ¶¶ 349, 403.)  By January 24,

2005, public calls were issued to remove Celebrex and Bextra from the market.  (Compl.  ¶ 357.)

On April 7, 2005, Pfizer agreed at the FDA's urging to insert a black box warning in Celebrex's

label and publicly announced that the FDA had directed it to remove Bextra from the market.

---

[3]     Plaintiffs assert that "the black box label is the most potent warning in the FDA's arsenal, and often has a significant negative impact on a drug's sales."  (Compl. ¶ 386.)

(Compl. ¶¶ 387, 391.)  Because the vast majority of the Plans' assets were invested in Company

Stock, their investments lost approximately 24% of their value when negative information about

Celebrex and Bextra became public; the Plans ultimately lost hundreds of millions of dollars as a

result of imprudent investments by Defendants in the Company Stock and Company Stock Funds

during the Class Period.  (Compl. ¶¶ 289, 406.)  Pfizer recorded charges of $1.2 billion in 2005

in connection with its removal of Bextra from the market.  (Compl. ¶ 397.)

*Claims Asserted*

Plaintiffs assert the following claims: breach by the Entity Defendants, Pfizer

(Count I) and Pharmacia (Count V) of the ERISA fiduciary duties to monitor, prudently invest

plan assets, and communicate; breach by the Pfizer Director Defendants (Count II) and the

Pharmacia Director Defendants (Count VI) of the ERISA fiduciary duties to monitor and

communicate; by the Pfizer Committee Defendants (Count III) and the Pharmacia Committee

Defendants (Count VII) of the ERISA fiduciary duties to prudently invest plan assets and

communicate; and for co-fiduciary liability on the part of the Pfizer Defendants (Count IV) and

the Pharmacia Defendants (Count VIII).  Plaintiffs claim that the ERISA fiduciary Defendants

breached their duty of loyalty by failing to take appropriate measures to resolve conflicts of

interest (Counts I-III; and Counts V-VII).  Plaintiffs assert claims for co-fiduciary liability against

all Defendants pursuant to ERISA § 405, 29 U.S.C. § 1105 (Counts I-III; and Counts V-VII).

DISCUSSION

Motion to Dismiss for Lack of Standing

In order to have standing to assert an ERISA claim pursuant to 29 U.S.C. §§

1132(a)(2) & (a)(3) a plaintiff, other than the Secretary of Labor, must be a participant, a

beneficiary, or a fiduciary of an ERISA-covered employee benefit plan.  See Coan v. Kaufman,

457 F.3d 250, 255 (2d Cir. 2006).  According to the Second Circuit, "this list is exclusive."

Donahue v. Teamsters Local 282 Welfare, Pension, Annuity, Job Training and Vacation and Sick

Leave Trust Funds, 12 F. Supp. 2d 273, 278-279 (E.D.N.Y. 1998) (citing Pressroom Unions-

Printers League Income Sec. Fund v. Cont'l Assurance Co., 700 F.2d 889, 892 (2d Cir. 1983)

("We therefore decline to construe § 1132(d)(1) as *sub silentio* conferring jurisdiction over actions

brought by parties other than those specified in § 1132(e)(1).")).  A participant is defined as "any

employee or former employee of an employer, or any member or former member of an employee

organization, who is or may become eligible to receive a benefit of any type from an employee

benefit plan . . . or whose beneficiaries may be eligible to receive any such benefit."  29 U.S.C.A.

§ 1002(7) (West 1999).  The Supreme Court has construed § 1002(7) to also encompass any

former employee with "a colorable claim that (1) he or she will prevail in a suit for benefits, or

that (2) eligibility requirements will be fulfilled in the future."  Firestone Tire & Rubber Co. v.

Bruch, 489 U.S. 101, 117-118 (1989) (internal quotations omitted).  Plaintiffs note that the Second

Circuit applies the Firestone standard flexibly to define "participant" and argue that plaintiffs have

standing if they are "within the zone of interests ERISA was intended to protect."  (Pls.' Opp'n to

Defs.' Mot. to Dismiss the CCAC ("Pls.' Opp'n"), at 50 (quoting Mullins v. Pfizer, Inc., 23 F.3d

663, 664, 668 (2d Cir. 1994) (finding that a former employee who alleged that he voluntarily

retired as a result of affirmative material misrepresentations by an employee benefits plan

administrator had standing to sue (internal quotations omitted).)

Defendants originally challenged the CCAC, arguing that the named Plaintiffs

lacked standing as to the Pharmacia, Warner-Lambert, Pfizer PSIP plans, and as well as the plans

maintained for all employees in Puerto Rico, including the PSIP-PR, PSP-PR, W-L PR, and Searle/Monsanto Puerto Rico Plans (collectively the "Puerto Rico Plans"), and asserted that their claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) in so far as they relate to those Plans.  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss the CCAC ("Defs.' Mem."), at 48-49.) The Complaint adds a Plaintiff, Vincent Romano, who is a participant in the Pharmacia Savings Plan.  (Compl. ¶ 35.)  Accordingly, Defendants now concede that any standing as to the Pharmacia Savings Plan is moot and they have also withdrawn their contention with respect to the U.S. Pfizer and Warner-Lambert Plans.  (See Order and Stip., Sept. 29, 2008; Defs'. Ltr. dated Aug. 1, 2007, attached as Ex. D to Defs.' & Pls. Joint Addendum, dated June 6, 2008 ("Defs.' Ltr."), at 2.) Noting, however, that none of the named Plaintiffs is alleged to have participated in any of the Puerto Rico Plans, Defendants contend that the Complaint must be dismissed with respect to those Plans because Plaintiffs lack ERISA standing to assert standing to assert claims regarding those Plans.  (See Defs.' Mem. at 49, 51; Order and Stip., Sept. 29, 2008; Defs.' Ltr. at 2.)

Plaintiffs do not contend that any named Plaintiffs are participants in the Puerto Rico Plans.  Rather, citing Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 422-424 (6th Cir. 1998), they argue that standing is present where the plans to which plaintiffs have no connection are similar to ERISA plans in which they do participate, when the claims asserted are similar. (Pls.' Opp'n at 47.)  In Fallick, the Sixth Circuit concluded that "whether a plaintiff will be able to represent the putative class . . . depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure" and, provided that an "ERISA class representative establishes his individual standing . . . [with respect to] his own ERISA-governed plan, . . . no additional constitutional standing requirement" needs to be met in order for

him to represent the other putative class members.  <u>Fallick</u>, 162 F. 3d at 423-424. Plaintiffs' resort to <u>Fallick</u> is unavailing because that case concerned a single benefit administration policy that had been applied identically to all of the employer's plans.  <u>See id.</u> at 423.  Here, the Plan provisions at issue regarding Company stock holdings are different, and Plaintiffs' claims relate to actions or omissions within the contexts of separate Plans.  Thus, even if it were appropriate to apply <u>Fallick</u>'s principle in this Circuit, its requisites are not met here.

        The Court finds that Plaintiffs lack standing to pursue their claims regarding the Puerto Rico Plans, as none of the Plaintiffs is alleged to have been a participant in any of the Puerto Rico Plans.  Accordingly, Plaintiffs' claims are dismissed without prejudice pursuant to Rule 12(b)(1) insofar as they are asserted with respect to the Puerto Rico Plans.

<u>Motion to Dismiss for Failure to State a Claim</u>

        In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss a complaint for failure to state a claim, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party."  <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted).  "[T]he issue is whether the [plaintiff] is entitled to offer evidence to support the claims."  <u>Hudson Valley Black Press v. Internal Revenue Service</u>, 307 F. Supp. 2d 543, 545 (S.D.N.Y. 2004) (internal citation and quotation marks omitted).  Nonetheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  <u>Bell Atlantic Corp. v. Twombly</u>,  U.S. 550 U.S. 544, ___, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"); <u>see</u> <u>also</u> <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007).

There are no specialized or heightened pleading rules for ERISA actions.  Rather, ERISA actions

are subject to the general notice pleading standard contained in Rule 8 of the Federal Rules of

Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader

is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2); In re WorldCom Inc. ERISA Litig., Inc., 263 F.

Supp. 2d 745, 759-60 (S.D.N.Y. 2003) (quoting Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 513

(2002)).

### *Fiduciary Status Under ERISA*

Defendants primarily assert that the Complaint should be dismissed as against

Pfizer and Pharmacia because Plaintiffs' allegations are insufficient to support relevant fiduciary

status, that the Director Defendants did not have relevant fiduciary duties, and that all of the

Defendants are shielded from liability arising from losses incurred in Company Stock investments

by a presumption that such investments are prudent, and Plaintiffs have failed to allege facts

sufficient to overcome the presumption.

To state a claim under ERISA Section 404 for breach of fiduciary duty, plaintiffs

must allege that (1) defendants were fiduciaries of the plan who, (2) acting within their capacities

as plan fiduciaries, (3) engaged in conduct constituting a breach of an ERISA fiduciary duty.  29

U.S.C. § 1109; Pegram v. Herdrich, 530 U.S. 211, 222-224 (2000).  Fiduciary status under ERISA

arises from being named as a fiduciary in plan documents or through the performance of fiduciary

functions.  ERISA defines the parameters of fiduciary status as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he
> exercises any discretionary authority or discretionary control
> respecting management of such plan or exercises any authority or
> control respecting management or disposition of its assets, (ii) he
> renders investment advice for a fee or other compensation, direct or

> indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.A. § 1002(21)(A).  ERISA requires that a fiduciary "discharge his duties with respect to a Plan . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use . . . ."  29 U.S.C.A.  § 1104(a).  An officer or director is only a fiduciary with respect to those aspects of a plan over which he or she was allocated fiduciary responsibility in plan documents or exercised discretionary authority or control.  See Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir.1987); Schultz v. Texaco Inc., 127 F. Supp. 2d 443, 451 (S.D.N.Y. 2001).

> *Plaintiffs' Fiduciary Status Allegations are*
> *Sufficient as to the Entity Defendants*

Because Pfizer and Pharmacia are not named as fiduciaries in the Plan documents, they are fiduciaries only if they have acted as fiduciaries in matters relevant to Plaintiffs' claims. See Siskind v. Sperry Ret. Program Unisys, 47 F.3d 498, 505 (2d Cir. 1995) ("An employer acts as a fiduciary within the meaning of ERISA . . . only when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration.").  Plaintiffs allege that "[d]uring the Class Period, Pfizer was the employer, sponsor and named and/or *de facto* fiduciary of the Pfizer Plans," (Compl. ¶ 37) , and that "during that portion of the Class Period before Pharmacia was acquired by Pfizer, Pharmacia was the employer, sponsor and named and/or *de facto* fiduciary of the Pharmacia Plans."  (Compl. ¶ 53.)  Plaintiffs allege:

> Pfizer is a *de facto* fiduciary because it exercised discretionary authority and control respecting the administration and management of the Pfizer Plans and the disposition of their assets.  Pfizer was responsible for designating the procedures for the investment of Trust assets for the Pfizer Plans. . . . Pfizer reserved the right to make ultimate decisions regarding Pfizer Plans investments, through the Pfizer Leadership Team, its committee of key executives.  Pfizer had the discretion and authority to suspend, eliminate, or reduce any of the Pfizer Plans' investments, including investments in Company Stock.

(Compl. ¶ 226; see id. ¶¶ 258-259 (alleging virtually the identical basis (minus the inclusion of the Leadership Team) for finding that Pharmacia was a de facto fiduciary through the "discretionary authority and control" it exercised over the "administration and management of the Pharmacia Plans and the disposition of their assets . . . including investments in Pharmacia Company Stock and the Pharmacia Company Stock Fund").  Plaintiffs also allege that the Entity Defendants had "authority to appoint and remove" other Plan fiduciaries.  (See Compl. ¶ 231 (Pfizer);  ¶ 261 (Pharmacia)).  Plaintiffs' allegations track the language of ERISA's functional definition of fiduciary (see Compl. ¶ 37 ("Pfizer, at all applicable times, exercised control over the activities of its directors, officers, and employees that performed fiduciary functions with respect to the Pfizer Plans."); id. ¶¶ 94, 178, 210, 226, 227).

Furthermore, Plaintiffs allege that the Entity Defendants exercised discretionary authority with respect to the management and disposition of Plan assets, and specifically allege that Pfizer and Pharmacia had and exercised day-to-day discretionary authority over Company Stock investments and appointed fiduciaries; that they had discretionary authority over the appointing of fiduciaries and, that "at all applicable times, [Pfizer and Pharmacia] exercised control over the activities of [their] directors, officers and employees that performed fiduciary functions with respect to the [Pfizer and Pharmacia] Plans, . . . and could hire, terminate, and

replace" at will those employees "whom [they] had the right to appoint."  (See Compl. ¶¶ 37, 231 (Pfizer);  ¶ 54 (Pharmacia)).  These allegations, taken as true for purposes of this motion practice, are sufficient to identify the Entity Defendants as fiduciaries with respect to the Company Stock Fund investments at issue in the case.

> *Plaintiffs' Fiduciary Status Allegations are Sufficient with*
> *Respect to the Director Defendants*

Plaintiffs allege that the Director Defendants were fiduciaries of the applicable Plans during the Class Period.  (Compl. ¶¶ 241, 267.)  Plaintiffs also allege that the Director Defendants appointed the Plan Committees, which were the named administrators and fiduciaries of their respective Plans, and which "serve[d] at the Board's pleasure."  (Compl. ¶ 91; see id. ¶¶ 106, 119, 210.)  Plaintiffs further allege that the Director Defendants exercised discretionary authority and control over the management of the investments of their respective ERISA Plans. (Compl. ¶ 238 ("the Pfizer Director Defendants were responsible for designating the procedures for the investment of Trust assets for the Plans, and thus held and exercised ultimate control over the Pfizer Plans' investments in Company Stock."); see id. ¶ 210 ("Pharmacia, through its Board of Directors, was responsible for selecting the [Pharmacia Savings Plan's] investment funds, and for establishing and communicating to the Trustee 'a funding policy and method consistent with the objectives of the Plan and of the Trust Fund.'"  (citing the 2002 Pharmacia Savings Plan).) The appointment and oversight of Plan fiduciaries is a fiduciary function.  See In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 465, 477 (S.D.N.Y. 2005) ("The Complaint adequately pleads [the Chairman of the Board of Directors] was a fiduciary to the extent he exercised discretionary authority over the appointment, retention and removal of Plan Administrators and Fund

Managers."); <u>In re Marsh ERISA Litig.</u>, No. 04 Civ. 8157 (SWK), 2006 WL 3706169, at *8

(S.D.N.Y. Dec. 14, 2006) (finding that the complaint alleged that the Director Defendants "had an

express duty to review and oversee" the relevant investment committees, and this allegation

served as a basis for establishing fiduciary status).  Plaintiffs have also alleged that the Director

Defendants exercised control over the challenged Company Stock investments.

       Plaintiffs' allegations are sufficient to support their claims insofar as they allege that the

Director Defendants had relevant fiduciary status with respect to the Plans.

### Sufficiency of ERISA Section 404 Claims

       In order to withstand this motion to dismiss the complaint, Plaintiffs' allegations

must be sufficient to support their claims that Defendants committed breaches of ERISA fiduciary

duties while acting within their capacity as Plan fiduciaries.

#### Duty-to-Monitor Claims

       Plaintiffs allege that the Entity Defendants (Counts I and V) and the Director

Defendants (Counts II and VI) breached their respective duties to appoint and monitor the Plan

administrators and failed to establish a procedure for monitoring the Plan Committees.  (Compl.

¶¶ 231, 237-238, 261, 268, 271, 409, 413, 423, 427.)  Plaintiffs assert that:

> The duty to monitor includes reading reports prepared by the
> appointees, holding regular meetings regarding the performance of the
> plan, providing the designated plan managers with necessary
> information, and taking action if the designated fiduciary makes
> imprudent decisions.  Plaintiffs believe and allege that the Pfizer
> Director Defendants failed to exercise their authority with the utmost
> prudence, including by failing to take the actions described herein, and
> thereby breached their fiduciary duty to monitor their appointees.

(Compl. ¶ 237; see id. ¶ 231 (describing the identical duty to monitor and breach of said duty by the Pfizer); ¶ 261 (Pharmacia); ¶ 271 (Pharmacia Director Defendants.)  According to Plaintiffs, the Entity and Director Defendants breached their appointment and removal duties, including their duty to monitor appointed investment fiduciaries, by failing to have procedures in place to monitor the Plan Committees and to review and evaluate whether the appointees adequately performed their responsibilities.  Such procedures, according to Plaintiffs, would have included holding regular meetings and requiring periodic reports on the Plans' performance, reading any reports prepared by these appointees, having a prudent process for providing Plan managers with necessary information and resources, and taking action if the appointed fiduciaries made imprudent decisions.  (Pls.' Opp'n at 16, 20-22 (citing CCAC ¶¶ 229-230, 236-238, 258, 260, 270, 273, 408, 412, 422, 426.)

Defendants contend that, even if the Directors were plan fiduciaries, their role was an extremely circumscribed one that was essentially limited to hiring or removing the Plans' respective committee members.  (Defs.' Mem. at 25-27.)  Indeed, Defendants suggest that since the "Complaint . . . fails to allege that . . . the Director Defendants failed to remove the Plan Committee Defendants for incompetence or any other wrongdoing . . . [and] also fails to allege facts even suggesting that . . . the Director Defendants failed to review [their] performance . . . Plaintiffs' failure-to-monitor claims must be dismissed as a matter of law."  (Id. at 26-27.)

Because the Complaint, when read in the light most favorable to Plaintiffs, alleges that the Entity Defendants and Director Defendants failed to establish a procedure for monitoring the Plan Committees, and to review those fiduciaries' performance, the motion to dismiss the duty-to-monitor claims against these Defendants is denied.

*Failure to Provide Complete and Accurate*
*Information to Other Plan Fiduciaries*

Plaintiffs allege that Defendants breached their obligation to communicate with other fiduciaries by "failing to provide complete and accurate information" regarding investments in Company Stock.   (See Compl. ¶ 409 (Count I, Pfizer); ¶ 413 (Count II, Pfizer Director Defendants); ¶ 417 (Count III, Pfizer Committee Defendants); ¶ 423 (Count V, Pharmacia); ¶ 427 (Count VI, Pharmacia Director Defendants); ¶ 431 (Count VII, Pharmacia Committee Defendants); see also Pls.' Opp'n at 6.)  Plaintiffs state:

> Had the Defendants properly discharged their fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in Company Stock, eliminating Company Stock or the Company Stock Funds as an investment alternative when it became imprudent . . . the Plans would have avoided some or all of the losses that they, and indirectly, the Plans' participants suffered.

(Compl. ¶ 408.)  Plaintiffs allege that Defendants knew or should have known that Celebrex and Bextra posed health risks similar to those for which their competitor Merck's drug, Vioxx, was removed from the market, yet Defendants continued to promote Celebrex and Bextra as safer alternatives to Vioxx.  (Pls.' Opp'n at 6-7 (citing the CCAC); Compl. ¶¶ 314-321.)  The Director Defendants, who were "privy to" or "had access to" "information at the highest level" of the company, knew or should have known about adverse material information regarding Celebrex and Bextra, yet they neglected "to provide complete and accurate information" to other plan fiduciaries including the Committee Defendants.  (Compl. ¶¶ 47, 59, 273, 413, 427.)  Throughout the Class Period, Plaintiffs allege, "Defendants had access to significant non-public information concerning [Bextra's and Celebrex's] risks . . . [however] Defendants disputed, minimized, and/or concealed indications that Celebrex and Bextra presented serious risks of cardiovascular

[dangers]."[4]  Compl.,  ¶ 329.)  Indeed, "Pfizer and Pharmacia continued . . . to issue false and

misleading statements regarding Celebrex['s] and Bextra's safety, efficacy, and profitability, in

order to artificially inflate the value of [the Company's] stock," and all Defendants knew or

should have known the stock price would suffer when the truth was ultimately disclosed.  (Pls.'

Opp'n at 7; see also Compl., ¶¶ 5-6, 314-317, 329.)

Through these allegations, Plaintiffs have adequately pled that Defendants failed to

provide accurate information concerning company stock investments to other Plan fiduciaries.

Defendants' motion to dismiss these claims is denied.  See In re WorldCom, Inc. ERISA Litig.,

263 F. Supp. 2d 745, 765 (S.D.N.Y. 2003) ("Plaintiffs' allegation that Ebbers failed to disclose to

the Investment Fiduciary and the other investing fiduciaries material information he had regarding

the prudence of investing in WorldCom stock is sufficient to state a claim.").

*Failure to Investigate Risks Associated*
*With Investments in Company Stock*

Plaintiffs allege that all Defendants failed to conduct a proper investigation

concerning the nature and extent of the risk posed to the Plans by: 1)  Pfizer's marketing of risky

products (including Bextra and Celebrex); 2) Pfizer's liability for any alleged injuries connected

to those products; and 3) Pfizer's liability for allegedly improper marketing and accounting

practices.  (Compl. ¶ 230 ("Pfizer and the other Pfizer Defendants failed to conduct a proper

investigation . . . [a]n adequate investigation would have revealed to a reasonable fiduciary that

investment in Pfizer stock, under these circumstances, was improvident."); see id. ¶¶ 239, 249;

¶ 413 ("If the Pfizer Director Defendants had properly discharged these duties, the investigation

---

[4]        The term "Defendants" as used in the Complaint covers everyone, including the
Director Defendants.

and monitoring would have revealed and the additional information would have made it [sic] clear

to a reasonably prudent fiduciary the imprudence of continuing to make and maintain investments

in Company Stock, different investment decisions would have been made, and losses to the Plans

would have been avoided or mitigated."); ¶ 255 ("The Pfizer Committee Defendants failed to

conduct a proper investigation concerning the nature and extent of the risk to the Pfizer plans");

¶ 259 ("Pharmacia and the other Pharmacia Defendants failed to conduct a proper investigation . .

. [a]n adequate investigation would have revealed to a reasonable fiduciary that investment in

Pharmacia Company Stock . . . under these circumstances, was improvident."); ¶¶ 274, 286

(Pharmacia Director Defendants and Pharmacia Committee Defendants "failed to conduct a

proper investigation"); ¶¶ 402, 407) ("Defendants abused their discretion as Plan fiduciaries by

failing to conduct an adequate investigation of these risks, and . . .  [by] fail[ing] to take the

necessary and required steps to ensure any effective and informed independent participant control

over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. §

1104(c)").)

   The Court finds that Plaintiffs have pled sufficiently that each of the Defendants

imprudently failed to investigate the risks associated with investments of Plan assets in Company

Stock.

<p style="text-align:center"><em>Failure to Manage Plan Assets Prudently</em></p>

   Plaintiffs allege that the Entity Defendants (Counts I and V) and the Committee

Defendants (Counts III and VII) breached their fiduciary duties to the Pfizer and Pharmacia Plans

and their respective participants and beneficiaries by: a) permitting the Plans to invest in

Company Stock Funds and allowing those Funds to be almost exclusively invested in Company

Stock; b) failing to evaluate whether such investments were prudent, when an evaluation would

have shown a reasonably prudent fiduciary that these investments were imprudent; c) permitting the Plans to invest in Company Stock Funds and Company Stock despite the Committee Defendants' ERISA duty to ignore Plan provisions that "purport to require imprudent conduct"; d) failing to supply complete and accurate information concerning such investments to other Plan fiduciaries, including Director Defendants; e) not making fiduciary decisions for the sole benefit of the Plans and their beneficiaries and participants insofar as they accepted Plan contributions of Company Stock instead of cash; and f) failing to seek independent advice in situations where there were potential conflicts of interest.  (Compl., ¶¶ 417, 431.)

*The Moench Presumption*

Citing the Third Circuit's 1995 decision in Moench v. Robertson,[5] Defendants argue that, because the Plans at issue explicitly provide for investments in company stock, Defendants are entitled to a presumption that the investments here at issue were prudent and that the Complaint should be dismissed because its fiduciary breach allegations are insufficient to overcome that presumption.  (Defs.' Mem. at 5, 27-28.)  In Moench, the Third Circuit held that ESOP fiduciaries who invest in company stock are entitled to a presumption of prudence:

> [K]eeping in mind the purpose behind ERISA and the nature of ESOPs themselves, we hold that in the first instance, an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision.  However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities.

Moench, 62 F.3d  at 571.  When applying the Moench presumption, a court reviews an ESOP

_____

[5]        62 F.3d 553 (3d Cir. 1995).

fiduciary's decision to invest in employer securities "for an abuse of discretion."  See, e.g., Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir. 1995) ("We agree with and adopt the Third Circuit's holding . . . .  In this regard, we will presume that a fiduciary's decision to remain invested in employer securities was reasonable.").

While Plaintiffs dispute that the funds at issue were ESOPs, they acknowledge that "each of the Plans featured investment in Company Stock and Company Stock Funds through participant contributions, or a matching component consisting entirely of employer contributions, or both."  (Compl. ¶ 70.)  Plaintiffs allege, however, that, under the terms of the Plans, any portion of the Plans' assets, including Company Stock funds, could instead have been placed in short-term investments such as cash or non-Company Stock Investments.  (See e.g., Compl. ¶¶ 85, 104, 113, 115, 132, 134, 147, 148.)  Plaintiffs therefore dispute not only Defendants' premise that Moench's presumption, which was developed in the ESOP context, should be applied to these Plans (which Plaintiffs contend were not ESOPs), but also the relevance of Moench's principle that fiduciaries who are compelled by plan terms to invest in employer stock should be entitled to a presumption that such at this juncture because dismissal of the case based upon such a presumption at the investments are prudent.

The Court finds it unnecessary to address the scope or the applicability of the Moench presumption pleading stage would be inappropriate.  The Moench decision itself was rendered on appeal from a grant of summary judgment.  See Moench, 62 F.3d  at 556-557.  Whether a plaintiff can overcome the presumption of prudence is an evidentiary question "ill-suited to resolution on a motion to dismiss."  See, e.g., In re Polaroid ERISA Litig., 362 F. Supp. 2d at 475 (citing In re Enron Corp. Sec., Deriv. & ERISA Litig., 284 F. Supp. 2d 511, 531 n.3 (S.D. Tex. 2003) and Vivien v. Worldcom, Inc., No. C02-01329 (WHA), 2002 WL 31640557, at

*5 (N.D. Cal. July 26, 2002)); <u>see also</u> <u>In re Ikon Office Solutions, Inc. Sec. Litig.</u>, 86 F. Supp. 2d 481, 492 (E.D. Pa. 2000) ("[I]t would be premature to dismiss even a portion of the ERISA complaint without giving plaintiffs an opportunity to overcome the presumption [of prudence].").

The Court further finds that, even if the consideration of such a presumption were appropriate at this stage, Plaintiffs have alleged sufficient facts in the Complaint to render plausible their causes of action for fiduciary breach.  Plaintiffs cite the substantial losses the ERISA Plans suffered as evidence that Defendants should have been aware, or put on inquiry notice, of the serious problems associated with the Company Stock and Company Stock Funds (Compl. ¶¶ 402, 403).  They further allege that Defendants knew or should have known of risky business and marketing practices with respect to Celebrex and Bextra that "artificially inflated the value of Company Stock and which otherwise rendered Company Stock and Company Stock Funds an imprudent and inappropriate investment . . . ."  (Compl. ¶ 6; <u>see id.</u> ¶¶ 50, 61, 230, 259; and ¶¶  417, 431 (asserting that an evaluation of the prudence of the investments "would have revealed to a reasonably prudent fiduciary the imprudence of continuing to make and maintain investments in the Company Stock Funds").)

Defendants' motion is, accordingly, denied insofar as it seeks dismissal of the claims for imprudent management and investment of plan assets based on the <u>Moench</u> presumption.

*Duty of Loyalty Claims*

Under ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ."  29 U.S.C.A. § 1104(a)(1) (West 1999); <u>see</u> <u>State Street Bank and Trust Co. v. Salovaara</u>, 326 F.3d 130, 136 (2d Cir. 2003) ("This statutory duty of loyalty has been described by this Court as requiring that a fiduciary act, in Judge

Friendly's felicitous phrase, with an 'eye single to the interests of the participants and beneficiaries.'" (citation omitted)).  Here, Plaintiffs allege that Defendants breached their duty of loyalty by "failing to obtain independent advice or engage an independent fiduciary in situations presenting potential conflicts of interest."  (See Compl.  ¶ 409 (Pfizer); ¶ 413 (Pfizer Directors); ¶ 417 (Pfizer Committee); ¶ 423 (Pharmacia); ¶ 427 (Pharmacia Directors); ¶ 431 (Pharmacia Committee).)  Plaintiffs allege that: 1) Defendants "disputed, minimized, and/or concealed" evidence of serious risks associated with Celebrex and Bextra throughout the Class Period and attempted to downplay the negative effects of such negative information once it was disclosed; 2) Defendants encouraged the Plans and participants to invest in Company Stock despite knowing this was not a prudent investment; 3) certain Defendants held Pfizer stock and Company stock options through executive compensation award plans and individual members of the Leadership Team received compensation that was tied directly to the Company's performance; and 4) during the Class Period, some Defendants who were members of the Leadership Team failed to provide complete and accurate material information about the financial condition of the Company and sold their own stock holdings for substantial sums.  (See Compl. ¶¶ 6, 42-43, 288-402.)

Defendants, arguing that Plaintiffs' allegations of conflict of interest are wholly based on certain Defendants' ownership of Company stock or stock options during the Class Period and two Defendants' sales of such stock, contend that mere ownership of employer stock is insufficient to support a claim for a breach of the fiduciary duty of loyalty and that the Complaint's breach of duty of loyalty allegations should be dismissed because no Defendant is alleged, for instance, to have sold his own stock based on inside information or otherwise acted in a manner detrimental to a Plan that was directly related to his own stockholdings or compensation. Thus, according to Defendants, there was no need for Defendants to have addressed a non-existent

conflict.  (Defs. Mem. At 42-43, n. 19.)

Defendants have construed Plaintiffs' allegations of breach of loyalty too narrowly. The Complaint, read liberally and in the light most favorable to Plaintiffs, alleges that Defendants engaged in a pattern of deception concerning problems with Celebrex and Bextra and failed to obtain independent advice when conflicts of interest were present.  (Compl. ¶¶ 6, 409, 413, 417, 423, 427, 431.)  So read, the Complaint is sufficient to support an inference that the Defendants' objectivity as to the Plans' interests was so compromised by their decision to engage in the cover up to benefit the corporation, that they could not act with an "eye single" to the interests of participants and beneficiaries and therefore had a duty to engage independent advice on decision-making for the Plans.  These allegations of conflict of interest are stated sufficiently to meet the Rule 8 pleading standards.  The Court, therefore, denies the motion to dismiss the duty of loyalty claims against Defendants.

*Co-Fiduciary Liability*

Plaintiffs allege that Defendants are liable as co-fiduciaries under ERISA § 405, 29 U.S.C. § 1105.  Every ERISA fiduciary is held to the "prudent man standard of care" pursuant to § 404(a), 29 U.S.C. § 1104(a), and is subject to ERISA's co-fiduciary liability provision under § 405(a), "regardless of the parameters of its duties."  In re WorldCom Inc. ERISA Litig., 354 F. Supp. 2d 423, 444-445 (S.D.N.Y. 2005) (internal quotations omitted); see Salovaara, 326 F.3d at 136 ( "Section 404(a) . . . imposes a general standard of duty on all fiduciaries" ).  ERISA § 405(a) provides:

> "[A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) . . . he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a) (West 1999).  Moreover, "[a]s the Eighth Circuit has observed, 'an ERISA trustee who deals with plan assets in accordance with proper directions of another fiduciary is not relieved of its fiduciary duties . . . to attempt to remedy known breaches of duty by other fiduciaries.'" In re WorldCom, Inc. ERISA Litig., 354 F. Supp. 2d at 445 (citing FirsTier Bank, N.A. v. Zeller, 16 F.3d 907, 911 (8th Cir. 1994)).

Pfizer's alleged failure to comply with ERISA § 404(a)(1) allegedly enabled other Defendants to breach their fiduciary duties.  (Compl. ¶ 234.)  Specifically, Pfizer "facilitated and sanctioned the actions of the Pfizer Committee Defendants vis-à-vis Pfizer Plans['] investments in Company Stock and Company Stock Funds" during the Class Period, knowing that such investments constituted a breach of fiduciary duty on the part of the Pfizer Committee Defendants. (Id.)  Pfizer, [including the entire Leadership Team[6]], "knew or had reason to know the [alleged] facts and circumstances" that made investment in Company Stock imprudent during the Class Period; acted or failed to act based on this actual or constructive knowledge; enabled other Plan fiduciaries to breach their fiduciary duties, and/or knew of such breaches committed by other fiduciaries, but "failed to make reasonable efforts under the circumstances to remedy those breaches."  (Compl. ¶ 411.)  Plaintiffs allege the same basis for co-fiduciary liability [minus the

---

[6]       Plaintiffs do not allege that the Leadership Team or its members are liable as co-fiduciaries under ERISA § 405, 29 U.S.C. § 1105.

inclusion of the Leadership Team] against the Pfizer Director Defendants (see id. ¶¶ 242, 415); the Pfizer Committee Defendants (¶¶ 256, 419);  Pharmacia (¶¶ 266, 425); Pharmacia Director Defendants (¶¶ 276, 429); and the Pharmacia Committee Defendants (¶¶ 287, 433); (see also ¶¶ 288-408 (discussing factual basis of Defendants' alleged breaches of their fiduciary duties).)

       Defendants argue that the Complaint fails to plead adequately facts establishing that 1) there was a primary breach of a fiduciary duty, and 2) there was actual knowledge by a co-fiduciary of the co-fiduciary's breach.  (Defs.' Mem. at 43-44.)  They label Plaintiffs' claims that Defendants had knowledge or reason to know "the facts and circumstances" that made investment in Company stock imprudent but failed to act as "conclusory allegations" that are insufficient to establish Defendants' actual knowledge or enabling of a co-fiduciary's breach of their duties.  (Id.)

       As explained above, Plaintiffs' allegations are sufficient to state causes of action for primary breaches of fiduciary duty.  The pleading of co-fiduciary liability claims is likewise sufficient to meet the requirements of Rule 8 and pass the test of Rule 12(b)(6).  Plaintiffs specify numerous facts and circumstances that they claim made the subject stock investments imprudent, as well as structures and means of access that they contend did or should have put Defendants on notice of those facts and circumstances and/or of their co-fiduciaries' alleged breaches.  Moreover, while ERISA sections 405(a)(1) and (a)(3) require actual knowledge of a co-fiduciary's breach, § 405(a)(2) provides for liability if a fiduciary's failure to comply with its duties under ERISA enabled another's breach.  Having reviewed thoroughly the Complaint, the Court finds that Plaintiffs have pled sufficiently their claims for co-fiduciary liability under at least one of the section 405(a) bases as to each Defendant as against whom such a claim is asserted.  Defendants' motion to dismiss the Complaint is denied as to the co-fiduciary liability claims.

*Claim Against Non-Fiduciaries*

In Counts IV and VIII of the Complaint, which are asserted against all Defendants, Plaintiffs claim that, even if certain of the Defendants are not fiduciaries, they are nonetheless liable under Section 502(a)(3) of ERISA, (29 U.S.C. § 1132(a)(3)), as non-fiduciary participants in breaches of duty by Plan fiduciaries.[7]  (Compl. ¶¶ 420-421; ¶¶ 434-435.)  Section 502(a)(3) provides in pertinent part that:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief . . . or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C.A. § 1132(a)(3) (West 1999).  Plaintiffs allege that non-fiduciary Defendants are liable because they "knew or had reason to know the [alleged] facts and circumstances" that made investment in Company Stock imprudent during the Class Period, acted or failed to act based on actual or constructive knowledge, and enabled other fiduciaries to breach their duties, and/or knew of such breaches and "failed to make reasonable efforts under the circumstances to remedy these breaches."  Plaintiffs claim that the Plans are entitled to restitution of any resulting "ill-gotten gains and profits" as "other appropriate equitable relief."  (See Compl.   ¶¶ 421, 435.)  In their papers in opposition to the instant motion, Plaintiffs allege that certain Defendants sold or disposed of their shares of Pfizer common stock on the open market and "received ill-gotten gains . . . of more than $35 million of company stock" during the Class Period.  (Pls.' Opp'n at 44, n. 61).  Plaintiffs assert

---

[7]      As explained above, the Complaint identifies a number of groupings of the individual Defendants.  One such grouping, the "Leadership Defendants," is comprised of individuals alleged to have held key positions with Pfizer, and to have performed certain discretionary functions with respect to the Plans, but none of Plaintiffs' fiduciary liability claims is asserted against the Leadership Group as such.  The non-fiduciary liability counts assert claims against all of the Defendants.

that discovery is needed to ascertain the existence of any ill-gotten gains and profits and to

determine whether they remain traceable.  (Id. at 44.)

       The Supreme Court has characterized section 502(a)(3) as a "catchall" remedial

section that offers "appropriate equitable relief for injuries caused by violations that § 502 does not

elsewhere adequately remedy."  Coan v. Kaufman, 457 F.3d 250, 262 (2d Cir. 2006) (quoting

Varity Corp. v. Howe, 516 U.S. 489, 512 (1996) (internal quotations omitted)).  It is not entirely

clear that liability under section 502(a)(3) reaches non-fiduciaries who are alleged, as here, to have

participated in breaches of the general fiduciary duties imposed by Section 404 of ERISA.

Compare Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 241 (2000)

(holding that action under Section 502(a)(3) can be maintained against non-fiduciary participant in

transaction prohibited by ERISA § 406) with Mertens v. Hewitt Assocs., 508 U.S. 248, 253-55

(1993) (reserving decision as to whether non-fiduciary service provider can be held liable under

§502(a)(3) for participating in alleged breaches relating to plan management).  The Court need not

resolve that issue here, however, because it is clear that the Complaint fails to make plausible

allegations of a basis for recovery of "appropriate equitable relief" under the statute.

       Relief under section 502(a)(3) is limited to "those categories of relief that were

typically available in equity."  Mertens v. Hewitt Associates, 508 U.S. 248, 256-257 (1993).

"Appropriate" equitable relief under § 502(a)(3) requires that both the basis of the claim and the

nature of the recovery sought be equitable.  Sereboff v. Mid Atlantic Med. Servs., Inc., 547 U.S.

356, 361, 363 (2006).  See Mertens, 508 U.S. at 255 (rejecting a rejecting a claim because "what

petitioners in fact seek is nothing other than compensatory damages –monetary relief for all losses

their plan sustained as a result of the alleged breach of fiduciary duties.  Money damages are, of

course, the classic form of <u>legal</u> relief").

           <u>            </u>Equitable restitution — recovery of particular funds or property in the defendant's possession to which there is a claim based on constructive trust, an equitable lien or similar principle -- is available under Section 502(a)(3).  <u>Sereboff</u>, 547 U.S. at 361-363; <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 212-214 (2002) .  Here, however, Plaintiffs do not seek the restoration of particular funds or property held by or traceable to the Plans, or subject to equitable liens for the benefit of the Plans, but rather the reimbursement of funds obtained by Defendants through sales of their own Company Stock at allegedly inflated prices or otherwise. This type of "restitution" is akin to money damages, the classic type of legal relief.

        Even if certain Defendants personally enriched themselves by selling Company Stock on the open market at prices that did not reflect the potential impact of material undisclosed information in their possession, nothing in Plaintiffs' complaint supports a reasonable inference that such profits constitute identifiable funds whose ownership can be traced to Plaintiffs or to the Plans, or on which equity would historically have recognized a lien in favor of either.  The Second Circuit has described appropriate equitable relief as follows:

> The Supreme Court has delineated what forms of equitable restitution are available under § 502(a)(3), distinguishing permissible forms of equitable restitution such as employment of a constructive trust or of an equitable lien from forms of legal restitution. . . . [A] constructive trust or equitable lien is imposed when, "in the eyes of equity," a plaintiff is "the true owner" of funds or property, and the "money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced back to particular funds or property in the defendant's possession."

<u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 103 (2d Cir. 2005)  (internal citation omitted). Indeed, the Second Circuit, in denying plaintiff's "equitable" claim in <u>Coan</u>, found that the remedy the plaintiff sought in that case was "not equitable in form or substance . . . [but rather] monetary

relief; she does not attempt to recover a specifically identified fund from the defendants. . . . money damages are unavailable under section 502(a)(3) when the plaintiff does 'not seek to recover a particular fund from the defendant.'" Coan, 457 F. 3d at 262-263 (internal quotations and citations omitted). Other circuits have been equally skeptical of purportedly equitable claims when the underlying nature of the relief sought was actually monetary damages. See Knieriem v. Group Health Plan, Inc., 434 F.3d 1058, 1060, 1064 (8th Cir. 2006) (dismissing plaintiff's argument that monetary recovery was available as restitution when a trustee had gained personally from wrongful action taken while managing a trust and noting that "[m]erely re-labeling the relief sought as 'restitution' . . . does not alter the nature of a remedy from monetary to equitable").

For these reasons, Counts IV and VIII fail to state claims for relief under section 502(a)(3) of ERISA and will, accordingly, be dismissed.

<center>CONCLUSION</center>

For the reasons stated above, Defendants' motion to dismiss the Consolidated Amended Class Action Complaint is granted insofar as it (1) seeks the dismissal of the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure of all claims regarding the Puerto Rico Plans [see, supra page 9] and (2) seeks dismissal of Counts IV and VIII of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion is denied in all other respects.

This Opinion and Order resolves docket entries 50 and 51.

SO ORDERED.

Dated: New York, New York
March 20, 2009

LAURA TAYLOR SWAIN
United States District Judge

PFIZER ERISA MTD.WPD          VERSION 3/20/09

30