# Exhibit 1 – Part 1

# PHARMACIA & UPJOHN
# EMPLOYEES SAVINGS PLAN

Amended and Restated
Effective January 1, 1998

1-PH/1128363.11

CONFIDENTIAL

PFE ERISA 0002029

PHARMACIA & UPJOHN
EMPLOYEES SAVINGS PLAN

Amended and Restated
Effective January 1, 1998

### Table of Contents

| ARTICLE I | HISTORY AND SCOPE | 1 |
| ARTICLE II | DEFINITIONS | 2 |
| ARTICLE III | ELIGIBILITY FOR PARTICIPATION | 14 |
| ARTICLE IV | CONTRIBUTIONS AND FORFEITURES | 15 |
| ARTICLE V | ESOP PROVISIONS | 19 |
| ARTICLE VI | LIMITATIONS ON EMPLOYER CONTRIBUTIONS | 23 |
| ARTICLE VII | INVESTMENT AND VALUATION OF ACCOUNTS | 29 |
| ARTICLE VIII | VESTING | 34 |
| ARTICLE IX | AMOUNT OF BENEFITS | 35 |
| ARTICLE X | PAYMENT AND FORM OF BENEFITS | 35 |
| ARTICLE XI | WITHDRAWALS AND LOANS | 39 |
| ARTICLE XII | SPECIAL PROVISIONS FOR TOP-HEAVY PLANS | 44 |
| ARTICLE XIII | PLAN ADMINISTRATION | 45 |
| ARTICLE XIV | AMENDMENT AND TERMINATION | 49 |
| ARTICLE XV | MISCELLANEOUS | 52 |

CONFIDENTIAL

PFE ERISA 0002030

PHARMACIA & UPJOHN
EMPLOYEES SAVINGS PLAN

Amended and Restated
Effective January 1, 1998

## ARTICLE I

## HISTORY AND SCOPE

1.01    History. The Company, Pharmacia & Upjohn Company, maintains the Plan for the benefit of its eligible employees and the eligible employees of its subsidiaries that adopt the Plan. The Plan is a profit sharing plan qualified under section 401(a) of the Code, with a cash or deferred arrangement under section 401(k) of the Code and an employee stock ownership feature under section 4975(e)(7) of the Code and section 407(d) of ERISA.

The Upjohn Company originally established the Plan on October 1, 1965 as "The Upjohn Employee Savings Plan." On June 19, 1989, The Upjohn Company established The Upjohn ESOP. An Exempt Loan was obtained by the ESOP Trustee and the proceeds of the Exempt Loan were applied to purchase Series B convertible perpetual preferred stock of The Upjohn Company. Effective as of December 31, 1989, The Upjohn Company ESOP was merged with and into the Plan. In 1990, the Initial Exempt Loan was refinanced. The Upjohn Company merged with Pharmacia U.S. Inc. to form the Company. As a result, the Company became the sponsor of the Plan and the Plan was renamed the "Pharmacia & Upjohn Employees Savings Plan." In connection with the merger, effective November 2, 1995, the stock of The Upjohn Company held under the Plan was converted into Series B perpetual preferred stock of Pharmacia & Upjohn, Inc. In 1997, the Exempt Loan was again refinanced.

Sugen, Inc. merged with and into the Company. As a result of that merger, the Company became the sponsor of the Sugen Plan as of the date of the merger. Effective October 31, 1999, the Sugen Plan was merged with and into the Plan.

In 2000, the Company merged with and into a subsidiary of Pharmacia Corporation (formerly known as Monsanto Company). As a result of this acquisition, the stock of Pharmacia & Upjohn, Inc. held under the Plan was converted into Series A convertible stock of Pharmacia Corporation.

This Plan is hereby amended and restated herein, effective January 1, 1998, to reflect the merger of the Pharmacia Plan and Sugen Plan with and into the Plan and to bring the Plan into compliance with the Retirement Protection Act, the Uniformed Services Employment and Reemployment Act of 1994, the Small Business Job Protection Act of 1996, the Taxpayer Relief Act of 1997, the IRS Restructuring and Reform Act of 1998, the Community Renewal Tax Relief Act of 2000, and all other applicable law as in effect on the effective date of this amendment and restatement of the Plan.

1-PH/1128363.11

1

CONFIDENTIAL

1.02    Effective Dates.  The original effective date of the Plan is October 1, 1965.  This amendment and restatement of the Plan is generally effective January 1, 1998, unless otherwise specifically provided for herein or as otherwise required by applicable law.

1.03    Rights Affected.  Unless specifically provided to the contrary herein or as otherwise required by applicable law, the provisions of the Plan shall apply to Employees who are credited with an Hour of Service after December 31, 1997.  The distribution provisions of the Plan shall also apply to former Employees and Beneficiaries whose vested interests, if any, under the Plan were not distributed before January 1, 1998.

1.04    Qualification Under the Internal Revenue Code.  It is intended that the Plan be a qualified plan within the meaning of section 401(a) of the Code and that the Trust be exempt from federal income taxation under the provisions of section 501(a) of the Code.

1.05    Documents.  The Plan consists of the Plan document as set forth herein and any subsequent amendments thereto.

## ARTICLE II

## DEFINITIONS

The following words and phrases as used herein have the following meanings, unless a different meaning is plainly required by the context:

2.01    "Account" means a Participant's After-Tax Account, Before-Tax Account, Discretionary Account, ESOP Account, Matching Account, and Rollover Account, and any other account maintained under the Plan for a Participant to which have been credited contributions made by or on behalf of such Participant, under any prior plan which has been merged into this Plan.

2.02    "Accounting Date" means the last day of each payroll period.

2.03    "Actual Contribution Percentage" means, with respect to a Plan Year, the ratio (expressed as a percentage) of the amount of Matching Contributions made on behalf of, and After-Tax Contributions made by, the Participant for the Plan Year to the Participant's Testing Compensation for the Plan Year.

2.04    "Actual Deferral Percentage" means, with respect to a Plan Year, the ratio (expressed as a percentage) of the amount of Before-Tax Contributions and Additional Matching Contributions made on behalf of the Participant for the Plan Year to the Participant's Testing Compensation for the Plan Year.

CONFIDENTIAL                                                                      PFE ERISA 0002032

2.05    "Additional Matching Contributions" means a contribution made by an Employer in accordance with Section 4.03.

2.06    "Administrative Committee" means the Administrative Committee appointed in accordance with Section 13.01.

2.07    "Adria Laboratories, Inc. Employee Savings Plan" means the Adria Laboratories Inc. Employee Savings Plan.

2.08    "Affiliate" means any entity included with the Employer in (a) a controlled group of employers or trades or businesses within the meaning of section 414(b) or 414(c) of the Code; (b) an affiliated service group within the meaning of section 414(m) of the Code; or (c) a group required to be aggregated pursuant to the regulations under section 414(o) of the Code; provided that any such employer shall be included within the term "Affiliate" only while a member of a group including the Employer.  For purposes of Section 6.05, whether a member of a controlled group is an Affiliate shall be determined under section 1563(a) of the Code (as incorporated through application of sections 414(b) and (c) of the Code) by substituting "50%" for "80%" everywhere it appears in section 1563(a) of the Code.

2.09    "After-Tax Account" means the Participant's account to which are credited (a) After-Tax Contributions, if any, (b) amounts, if any, transferred to the Plan from a Participant's After-Tax Account under the Pharmacia Plan, and (c) earnings and losses thereon.

2.10    "After-Tax Contribution" means a Participant's contribution made in accordance with Section 4.01(b).

2.11    "Aggregation Group" means the group of qualified plans sponsored by the Employer or by an Affiliate formed by including in such group (a) all such plans in which a Key Employee participates in the Plan Year containing the Determination Date, or any of the four preceding Plan Years, including any frozen or terminated plan that was maintained within the five-year period ending on the Determination Date, (b) all such plans which enable any plan described in clause (a) to meet the requirements of either section 401(a)(4) of the Code or section 410 of the Code, and (c) such other qualified plans sponsored by the Employer or an Affiliate as the Employer elects to include in such group, as long as the group, including those plans electively included, continues to meet the requirements of sections 401(a)(4) and 410 of the Code.

2.12    "Before-Tax Account" means the Participant's account to which are credited Before-Tax Contributions, if any, and earnings and losses thereon.

2.13    "Before-Tax Contribution" means a contribution made by an Employer in accordance with a Participant's salary reduction agreement pursuant to Section 4.01(a).

CONFIDENTIAL                                                  PFE ERISA 0002033

2.14    "Beneficiary" means (a) the Participant's Spouse, or (b) the person, persons or trust designated by the Participant, with the consent of his Spouse, if any, as direct or contingent beneficiary.  In order to be valid, the Spouse's consent to a Beneficiary other than, or in addition to, the Participant's Spouse must be in writing, must consent to the specific Beneficiary designated, must acknowledge the effect of such consent, and must be witnessed by a Plan representative or notary public.  If the Participant has no Spouse and no effective beneficiary designation, his Beneficiary shall be the first of the following classes in which there is any person surviving the Participant:  (a) the Participant's children, (b) the Participant's parents, (c) the Participant's brothers and sisters, and (d) any individual not described above who is a natural object of the Participant's bounty or a dependent of the Participant.  If none of the foregoing classes include a person surviving the Participant, the Participant's Beneficiary shall be his estate.

2.15    "Biotech Plan" means the Pharmacia Biotech Inc. Tax Sheltered Employees' Savings Plan and Trust Agreement.

2.16    "Benefit Commencement Date" means the first day on which all events have occurred that entitle a Participant to a benefit.

2.17    "Board" means the Board of Directors of the Company.

2.18    "Break-in-Service" means:

(a) with respect to a Covered Employee who is neither a Temporary Employee nor a Call-In Employee, a Computation Period within which an Employee is not credited with an Hour of Service; or

(b) with respect to a Covered Employee who is a Temporary Employee or a Call-In Employee, a Computation Period within which an Employee is not credited with more than 500 Hours of Service.

Notwithstanding the foregoing, solely for the purpose of determining whether a Break-in-Service has occurred, in the case of an absence from employment by reason of the pregnancy of the Employee, the birth of a child of the Employee, the placement of a child with the Employee in connection with the adoption of the child by the Employee or the caring for the child for a period beginning immediately following that birth or placement, an Employee shall be credited with no more than 501 Hours of Service on account of any single continuous period of such absence.  In order for an absence to be considered to be for the reasons described in the foregoing sentence, an Employee shall provide the Administrative Committee with information regarding the reasons for the absence and the length of the absence.  Nothing in this Section 2.18 shall be construed as expanding or amending any maternity or paternity leave policy of an Employer or Affiliate.  In addition, an Employee on Qualified Military Service shall not incur a Break in Service provided the Employee returns to service while his employment rights are protected by law.

CONFIDENTIAL

PFE ERISA 0002034

2.19    "Call-In Employee" means an Employee who is employed by the Employer in a temporarily vacant position or during peak workload periods for up to a maximum of 1,200 Hours of Service during any consecutive 12-month period.

2.20    "Code" means the Internal Revenue Code of 1986, as amended.

2.21    "Common Stock" means the Common Stock of Pharmacia Corporation.

2.22    "Company" means Pharmacia & Upjohn Company.

2.23    "Company Stock" means either Preferred Stock or Common Stock which constitutes qualifying employer securities under section 409(l) of the Code.

2.24    "Company Stock Fund" shall be the aggregate of all of the assets held in the Common Stock Investment Account and all Employees' ESOP Accounts.

2.25    "Common Stock Investment Account" means the Investment Vehicle which invests exclusively in Common Stock.

2.26    "Compensation" means the total of a Participant's wages, salary, and other amounts payable to an Employee by an Employer, including overtime, premiums, incentive payments, bonuses, commissions, short term absence payments, short term disability payments, and amounts deducted in accordance with sections 125 or 401(k) of the Code, but excluding any amounts received by an Employee while he is not a Participant, any compensation paid in a form other than cash, special allowances, long-term disability payments, and fringe benefits.  With respect to Plan Years beginning on or after January 1, 2001, a Participant's Compensation shall also include amounts which are not includible in gross income by reason of section 132(f) of the Code.   A Participant's Compensation shall not exceed the dollar limitation in effect under section 401(a)(17) of the Code with respect to any Plan Year.  For purposes of Section 4.04 herein, an Employee's Compensation for the applicable period of Qualified Military Service shall be deemed to equal the amount of Compensation the Employee would have received from the Employer during such period, based on the rate of pay the Employee would have received from the Employer but for the absence due to the Qualified Military Service, or, if such rate of pay is not reasonably certain, the Employee's average Compensation during the 12-month period immediately before the Qualified Military Service or, if shorter, the period of employment immediately before the Qualified Military Service.

2.27    "Computation Period" means the 12 consecutive month period beginning on the date of an Employee's commencement of employment with the Employer and each anniversary thereof.

CONFIDENTIAL                                                                 PFE ERISA 0002035

2.28    "Covered Employee" means any Employee who is either a citizen of the United States or not a citizen of the United States but regularly employed by the Employer in the United States or its territories or possessions other than:

(a) any Employee, other than a Foreign Service Employee, who is a citizen of the United States but working outside the United States for an Affiliate that has not adopted the Plan;

(b) any Employee who is a member of a collective bargaining unit, unless such collective bargaining agreement provides for the Employee's participation in the Plan; and

(c) any individual who is not an employee of the Employer but who provides services as described in section 414(n)(2) of the Code, or any individual who is not treated by the Employer as an employee for purposes of federal employment taxes, including but not limited to an individual who is classified as an independent contractor by the Employer, regardless of how such individual is classified by the Internal Revenue Service, any other governmental agency, government or court.

2.29    "Determination Date" means the last day of the preceding Plan Year or, in the case of the first Plan Year, the last day of such Plan Year.

2.30    "Disability" means:

(a)    Except as provided in (b) and (c) below, a physical or mental condition that qualifies the Participant for long-term benefits under the Pharmacia & Upjohn Absence Payment Plan.

(b)    With respect to a Participant who was a participant in the Sugen Plan as of October 31, 1999, "Disability" means a determination by a physician approved by the Employer that the Participant cannot engage in any substantial, gainful activity because of a medically determinable physical or mental impairment likely to result in death or to be of a continuous period of not less than 12 months.

(c)    With respect to a Participant who was a participant in the Pharmacia Plan as of December 31, 1999, "Disability" means the total and permanent inability, by reason of physical or mental infirmity or both, of a Participant to perform, without endangering his health, the tasks, function or duties assigned to him by the Employer, which condition is expected to last for not less than twelve consecutive months; provided that the determination of the existence or nonexistence of such Participant's Disability shall be made by the Global Oversight Committee pursuant to an examination by a physician selected or approved by the Global Oversight Committee; and provided further, that a Participant who was a participant under the Pharmacia Plan and who was a prior plan participant in the Biotech Plan and Trust Agreement, the Kabi Pharmacia

CONFIDENTIAL

PFE ERISA 0002036

Inc. Employee Savings Plan, or the Adria Plan, prior to October 1, 1995, shall be deemed to have a Disability if the Participant would have met the requirements for disability under those plans, as applicable.

2.31     "Discretionary Account" means the Participant's account to which are credited amounts, if any, transferred to the Plan from a Participant's discretionary employer contribution account under the Pharmacia Plan and earnings and losses thereon,

2.32     "Distributee" means a Participant, the surviving Spouse of a deceased Participant, or a Participant's Spouse or former Spouse who is an alternate payee under a Qualified Domestic Relations Order.

2.33     "Employee" means any of the following: (a) an individual who is employed by the Employer, (b) when required by context for purposes of crediting Hours of Service under Section 2.44, a former Employee, or (c) a leased employee as described under section 414(n)(2) of the Code.

2.34     "Employer" means the Company and any Affiliate that, with the consent of the Board, the Global Employee Benefits Oversight Committee, or the Administrative Committee, adopts the Plan and joins in the Trust Agreement.

2.35     "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

2.36     "ESOP Account" means the Participant account to which are credited Matching Contributions, if any, made to the Plan with respect to Plan Years beginning on or after January 1, 1990 and earnings and losses thereon.

2.37     "ESOP Trust" means the portion of the Fund attributable to amounts formerly held under the Upjohn ESOP and amounts held in the ESOP Accounts of Participants, the Suspension Subfund, and the Released and Unallocated Subfund.

2.38     "ESOP Trustees" means the party or parties appointed by the Board as trustee of the ESOP Trust and named as trustee pursuant to the Trust Agreement governing the ESOP Trust or any successors thereto.

2.39     "Exempt Loan" means any loan to the Plan or Trust not prohibited by section 4975(c) of the Code or section 406 of ERISA because the loan meets the requirements set forth in section 4975(d)(3) of the Code and, section 408(b)(3) of ERISA, and the regulations promulgated thereunder, the proceeds of which loan are used to finance the acquisition of Preferred Stock or refinance or repay such loan.

2.40     "Foreign Service Employee" means a former employee of an entity related to the Company that is not an Affiliate, who, on or after February 1, 1986, is

CONFIDENTIAL                                                        PFE ERISA 0002037

transferred to temporary or permanent employment with the Company or an Affiliate, and who, at the time of such transfer, is not a United States citizen.

2.41    "Fund" means the assets and all earnings, appreciation and additions thereto, less losses, depreciation, and any proper payments made by the Trustee, held under the Trust by the Trustee for the exclusive benefit of Participants and their Beneficiaries.

2.42    "Global Oversight Committee" means the Global Employee Benefit Oversight Committee appointed in accordance with Section 13.02.

2.43    "Highly Compensated Employee" means an Employee who either:

(a) was a 5% owner (as defined in section 416(i)(1) of the Code) at any time during the Plan Year for which Highly Compensated Employees are being identified or the preceding Plan Year; or

(b) with respect to the Plan Year preceding the calendar year for which Highly Compensated Employees are being identified both (1) had Testing Compensation in excess of the dollar amount under section 414(q)(1)(B)(i) of the Code,

as in effect for such Plan Year, and (2) was in the top 20% of all Employees when ranked on the basis of Testing Compensation.

2.44    "Hour of Service" means, for any Employee:

(a) except as provided in subsection (b),

(1)    each hour for which he is directly or indirectly paid or entitled to payment by the Company or an Affiliate for the performance of employment duties; or

(2)    each hour for which he is entitled, either by award or agreement, to back pay from the Company or an Affiliate, irrespective of mitigation of damages; or

(3)    each hour for which he is directly or indirectly paid or entitled to payment by the Company or an Affiliate on account of a period of time during which no duties are performed due to vacation, holiday, illness, incapacity (including disability), jury duty, layoff, leave of absence, or military duty; or

(4)    each hour for which he is absent during a period of Qualified Military Service that would have constituted part of the Employee's customary work week if he had remained actively employed in the position he held immediately prior to the beginning of the Qualified Military Service, provided the Employee returns to work with the Company or Affiliate within such period as his right to reemployment is protected by law;

1-PH/1128363.11                                    8

CONFIDENTIAL                                                     PFE ERISA 0002038

(b) anything to the contrary in subsection (a) notwithstanding:

(1)     no Hours of Service shall be credited to an Employee for any period merely because, during such period, payments are made or due him under a plan maintained solely for the purpose of complying with applicable workers' compensation, unemployment compensation, or disability insurance laws;

(2)     no more than 501 Hours of Service shall be credited to an Employee under paragraph (a)(3) of this definition on account of any single continuous period during which no duties are performed by him, except to the extent otherwise provided in the Plan or as provided under Section 2.44(a)(4) above;

(3)     no Hours of Service shall be credited to an Employee with respect to payments solely to reimburse for medical or medically related expenses;

(4)     no Hours of Service shall be credited twice;

(5)     Hours of Service shall be credited at least as liberally as required by the rules set forth in sections 2530.200b-2(b) and (c) of the United States Department of Labor regulations;

(6)     in the case of an Employee who is a leased employee, within the meaning of section 414(n) or 414(o) of the Code, Hours of Service shall be credited as if such Employee were employed and paid with respect to such service (or with respect to any related absences or entitlements) by the Company or Affiliate that is the recipient thereof; and

(7)     if an Employee receives compensation for reasons other than for the performance of duties, Hours of Service shall be determined in accordance with a formula, the numerator of which is the amount of the payment received or due and the denominator of which is the lesser of:

(A)     the Employee's most recent rate of earnings for performance of services; or

(B)     the Employee's average hourly rate of earnings for the performance of duties for the most recent Plan Year.

2.45     "Investment Committee" means the Global Employee Benefits Plan Investment Committee appointed by the Company in accordance with Section 13.02.

2.46     "Investment Vehicle" means a fund selected by the Investment Committee in which the Fund or any portion thereof may be invested.

2.47     "Key Employee" means a person employed or formerly employed by the Employer or an Affiliate who, during the Plan Year or during any of the preceding four Plan Years, was any of the following:

CONFIDENTIAL

PFE ERISA 0002039

(a) an officer of the Employer having annual Testing Compensation of more than 50% of the amount in effect under section 415(b)(1)(A) of the Code for the Plan Year, the number of persons to be considered officers in any Plan Year and the identity of the persons to be so considered shall be determined pursuant to the provisions of section 416(i) of the Code and the regulations issued thereunder;

(b) one of the 10 employees who owns (or is considered as owning under the attribution rules set forth at section 318 of the Code and the regulations thereunder) the largest interest in the Employer or such Affiliate, provided that no person shall be considered a Key Employee under this subsection (b) if his annual Testing Compensation is not greater than the limitation in effect for such Plan Year under section 415(c)(1)(A) of the Code, nor shall any person be considered a Key Employee under this subsection (b) if his ownership interest in the Plan Year being tested and the preceding four Plan Years was at all times less than one-half of 1% in value of any of the entities forming the Employer and the Affiliate;

(c) a 5% owner of the Employer; or

(d) a person who is both an employee whose annual Testing Compensation exceeds $150,000 and who is a 1% owner of the Employer.

The Beneficiary of any deceased Participant who was a Key Employee shall be considered a Key Employee for the same period as the deceased Participant would have been so considered.

2.48    "Key Employee Ratio" means the ratio (expressed as a percentage) for any Plan Year, calculated as of the Determination Date with respect to such Plan Year, determined by dividing the amount described in subsection (a) hereof by the amount described in subsection (b) hereof, after deduction from both such amounts of the amount described in subsection (c) hereof.

(a) The amount described in this subsection (a) is the sum of (1) the aggregate of the present value of all accrued benefits of Key Employees under all qualified defined benefit plans included in the Aggregation Group, (2) the aggregate of the balances in all of the accounts standing to the credit of Key Employees under all qualified defined contribution plans included in the Aggregation Group, and (3) the aggregate amount distributed from all plans in such Aggregation Group to or on behalf of any Key Employee during the period of five Plan Years ending on the Determination Date.

(b) The amount described in this subsection (b) is the sum of (1) the aggregate of the present value of all accrued benefits of all Participants under all qualified defined benefit plans included in the Aggregation Group, (2) the aggregate of the balances in all of the accounts standing to the credit of all Participants under all qualified defined contribution plans included in the Aggregation Group, and (3) the aggregate amount distributed from all plans in such Aggregation Group to, or on behalf

CONFIDENTIAL

PFE ERISA 0002040

of, any Participant during the period of five Plan Years ending on the Determination Date.

(c) The amount described in this subsection (c) is the sum of (1) all rollover contributions (or similar transfers) to plans included in the Aggregation Group initiated by an Employee from a plan sponsored by an employer which is not the Employer or an Affiliate, (2) any amount that would have been included under subsection (a) or (b) hereof with respect to any person who has not rendered service to any Employer at any time during the five-year period ending on the Determination Date, and (3) any amount that is included in subsection (b) hereof for, on behalf of, or on account of, a person who is a Non-Key Employee as to the Plan Year of reference but who was a Key Employee as to any earlier Plan Year.

The present value of accrued benefits under any defined benefit plan shall be determined under the method used for accrual purposes for all plans maintained by the Employer and all Affiliates if a single method is used by all such plans, or otherwise, the slowest accrual method permitted under section 411(b)(1)(C) of the Code.

2.49    "Matching Account" means a Participant's account to which are credited (a) Matching Contributions, if any, made to the Plan with respect to Plan Years beginning before January 1, 1990, (b) Additional Matching Contributions, if any, and (c) earnings and losses on such Matching Contributions and Additional Matching Contributions.

2.50    "Matching Contribution" means a contribution made by an Employer in accordance with Section 4.02.

2.51    "Non-Highly Compensated Employee" means an Employee other than a Highly Compensated Employee.

2.52    "Non-Key Employee" means any Employee or former Employee who is not a Key Employee as to that Plan Year, or a Beneficiary of a deceased Participant who was a Non-Key Employee.

2.53    "Normal Retirement Age" means age 65.  With respect to a Participant who was a participant in the Sugen Plan as of October 31, 1999, "Normal Retirement Age" means age 59 ½.

2.54    "Notice Period" means the period beginning 90 days before and ending 30 days before the Benefit Commencement Date.  The 30-day minimum may be waived by a Distributee, provided that the minimum Notice Period may not be less than seven days before the date distribution is made.

2.55    "Participant" means a Covered Employee who has met the eligibility requirements of Section 3.01.  An individual who ceases to be a Participant shall

CONFIDENTIAL

PFE ERISA 0002041

nonetheless remain a Participant for purposes of benefit payments only, until all amounts due him under the Plan have been paid.

2.56    "Pharmacia Plan" means the Pharmacia U.S. Inc. Employee Savings Plan which was merged into this Plan effective December 31, 1999.

2.57    "Plan" means the "Pharmacia & Upjohn Employees Savings Plan" set forth in this document and the related trust agreement pursuant to which the Trust is maintained.

2.58    "Plan Year" means the calendar year.

2.59    "Preferred Stock" means (a) before November 2, 1995, Series B, preferred stock of The Upjohn Company, (b) on or after November 2, 1995, but before the effective date of the Company's merger with Pharmacia Corporation (formerly Monsanto Company), Series B perpetual preferred stock of Pharmacia & Upjohn, Inc., and (c) on or after the effective date of the Company's merger with Pharmacia Corporation (formerly Monsanto Company), Series A convertible perpetual preferred stock of Pharmacia Corporation.

2.60    "PRTLOA Program" means the PRTLOA leave of absence program sponsored by the Company.

2.61    "Qualified Domestic Relations Order" means a judgment, decree or order that relates to a Participant's benefit under the Plan and meets the requirements of section 414(p) of the Code.

2.62    "Qualified Joint and Survivor Annuity" means an annuity for the life of the Participant with a survivor annuity for the life of the Participant's Spouse equal to at least 50% and no greater than 100% (as designated by the Participant) of the monthly amount payable for the Participant's life.  In the event the Participant fails to designate the percentage of the monthly amount payable for the Participant's life that will be payable to his Spouse as a survivor annuity, the designated percentage will be 50%.

2.63    "Qualified Military Service" means any service in the uniformed services (as defined in Chapter 43 of title 38, United States Code) where the Participant's right to reemployment is protected by law.

2.64    "Released and Unallocated Subfund" means the Subfund established and maintained in the ESOP Trust to hold Company Stock released from the Suspense Subfund, but not yet allocated to Participants' ESOP Accounts.

2.65    "Rollover Account" means a Participant's account to which are credited the Participant's Rollover Contributions, if any, and earnings and losses thereon.

CONFIDENTIAL

PFE ERISA 0002042

2.66    "Rollover Contribution" means a contribution made by a Participant pursuant to Section 4.07.

2.67    "Savings Trust" means the portion of the Fund attributable to any amounts not held under the ESOP Trust.

2.68    "Savings Trustee" means the party or parties appointed by the Board as trustee of the Savings Trust and named as trustee pursuant to the trust agreement governing the Savings Trust or any successors thereto.

2.69    "Special Account" means the Participant's account to which are credited amounts, if any, transferred to the Plan from a Participant's special employer contribution account under the Pharmacia Plan and earnings and losses thereon.

2.70    "Spouse" means the person to whom a Participant is married; provided, however, that a former spouse shall be treated as the Spouse or surviving Spouse to the extent provided under a Qualified Domestic Relations Order.

2.71    "Sugen Plan" means the Sugen, Inc. 401(k) Plan previously merged into this Plan, effective October 31, 1999.

2.72    "Suspense Subfund" means the subfund of the ESOP Trust that holds Company Stock which has been purchased with the proceeds of an Exempt Loan before such Company Stock has been released to the Released and Unallocated Subfund and allocated to Participants' ESOP Accounts.

2.73    "Temporary Employee" means an Employee whose job with his Employer is limited to either (a) 6 months or (b) 1,000 Hours of Service, during any consecutive 12-month period.

2.74    "Testing Compensation" means the total of a Participant's wages, salary and other amounts paid by an Employer and reported in IRS Form W-2, and any amounts deferred under section 402(g)(3) or 125 of the Code. For Plan Years beginning on or after January 1, 2001, Testing Compensation shall include amounts which are not includible in gross income by reason of section 132(f) of the Code.

2.75    "Trust" means the legal entity created by the trust agreement or agreements between the Employer and the Trustee, fixing the rights and liabilities with respect to controlling and managing the Fund for the purposes of the Plan.

2.76    "Trustee" means, collectively the ESOP Trustee and the Savings Trustee.

2.77    "Upjohn ESOP" means The Upjohn Company Employee Stock Ownership Plan.

CONFIDENTIAL

PFE ERISA 0002043

2.78    "Valuation Date" means each business day or such other less frequent dates determined by the Investment Committee to accommodate the nature, management or administration of the specified Funds.

2.79    "Year of Service" means a Computation Period (as defined in Section 2.27) within which an Employee is credited with at least 1,000 Hours of Service. Notwithstanding the foregoing, however, if an Employee terminates employment with the Employer and is subsequently rehired by the Employer, upon his return, all of his Years of Service shall be taken into account after his return to employment with the Employer; except, however, that an Employee's Years of Service before any Break-in-Service shall be disregarded for eligibility purposes under the Plan if the Employee had not yet become a Participant at the time he terminated employment with the Employer and his number of consecutive Breaks-in-Service before his reemployment with the Employer equals or exceeds the greater of:

(a) five; or

(b) the aggregate number of his Years of Service before the Breaks-in-Service.

Notwithstanding the foregoing, however, the exception providing for the disregarding of Years of Service for eligibility purposes as described in the immediately foregoing sentence shall not apply to an individual who was an Employee of the Company on or before November 15, 1995 and whose date of rehire immediately following his most recent Break-in-Service was before January 1, 1999.

## ARTICLE III

## ELIGIBILITY FOR PARTICIPATION

3.01    Eligibility Requirements.

(a) A Covered Employee other than a Call-In or Temporary Employee shall be eligible to become a Participant upon his first day of employment with the Employer as a Covered Employee.

(b) A Covered Employee who is a Call-In or Temporary Employee shall be eligible to become a Participant upon his completion of 1,000 Hours of Service within a 12-consecutive month period.

(c) If a Covered Employee was employed by Pharmacia U.S. Inc. as of December 31, 1999, but was not a participant in the Pharmacia Plan as of such date, such Covered Employee shall be eligible to become a Participant upon his first day of employment with the Employer as a Covered Employee.

CONFIDENTIAL

PFE ERISA 0002044

(d)  If a Covered Employee was employed by Sugen, Inc. as of October 31, 1999, but was not a participant in the Sugen Plan as of such date, such Covered Employee shall be eligible to become a Participant upon his first day of employment with the Employer as a Covered Employee.

3.02    Participation Commencement Date.  Each Covered Employee who was a Participant in the Plan as of December 31, 1997 shall continue to be a Participant on January 1, 1998, if he is then a Covered Employee.  Each Covered Employee who was a participant in the Sugen Plan as of October 30, 1999 shall be a Participant in the Plan on October 31, 1999.  Each Covered Employee who was a participant in the Pharmacia Plan as of December 30, 1999 shall be a Participant in the Plan on December 31, 1999.  Each other Covered Employee shall be a Participant on the first day of the payroll period coincident with or next following his satisfaction of the eligibility requirements under Section 3.01, if he is then a Covered Employee.

3.03    Reemployed Individuals.

(a) If an individual was a Participant as of the date of his termination of employment with the Employer and he is later rehired by the Employer, he shall become a Participant upon his date of reemployment with the Employer, provided he is then a Covered Employee.

(b) If an individual who was a Covered Employee as of the date of his termination of employment with the Employer, terminates employment before becoming a Participant and is later rehired by the Employer, he shall become a Participant on the later of (1) the date he would become a Participant in accordance with Section 3.02 or (2) the date of his reemployment with the Employer, provided he is then a Covered Employee.

3.04    Time of Participation - Excluded Employees.  An Employee who otherwise satisfies the eligibility requirements of Section 3.01, but who is ineligible to be a Participant because he is not a Covered Employee, shall be eligible to become a Participant as of the first day of the month coincident with or next following the date upon which he becomes a Covered Employee.  A Participant shall cease to be an active Participant on any date on which he ceases to be a Covered Employee.

## ARTICLE IV

## CONTRIBUTIONS AND FORFEITURES

4.01    Before-Tax Contributions and After-Tax Contributions.

(a) Before-Tax Contributions.  Subject to the limitations under Article VI, each Employer shall make a Before-Tax Contribution for the Plan Year to the Before-Tax Account of each of its Covered Employees who, with respect to such Plan Year, is a Participant and has executed a salary reduction agreement between the

CONFIDENTIAL

PFE ERISA 0002045

Participant and the Employer that provides for a reduction in Compensation otherwise payable to the Participant of a whole percentage up to the limit specified under subsection (c).

(b) <u>After-Tax Contributions</u>.  Subject to the limitations in Article VI, each Participant may make an After-Tax Contribution in an amount equal to a whole percentage of Compensation up to the limit specified under subsection (c) as specified in a salary reduction agreement.

(c) <u>Amount of Before-Tax and After-Tax Contributions</u>.  The amount of the Before-Tax Contributions shall be the amount specified in the salary reduction agreement.  Subject to the limitations under Article VI, the maximum percentage of Compensation that a Participant may have withheld as Before-Tax Contributions and After-Tax Contributions, in the aggregate, with respect to any Plan Year shall not exceed 18% of such Participant's Compensation with respect to such Plan Year.  Any agreement shall relate only to Compensation as yet unearned when the agreement is executed and may not be amended during the period to which it pertains, except as otherwise provided in subsection (e) and except that it may be terminated as to amounts unearned at the date of termination.

(d) <u>Effective Date of Salary Reduction Agreement</u>. Salary reduction agreements pursuant to this Section 4.01 must be executed prior to the payroll period in which Before-Tax Contributions or After-Tax Contributions, as applicable, are scheduled to commence, within the time period prescribed by the Administrative Committee.  The salary reduction agreement shall become effective as of the first pay date of the first payroll period to which it relates.

(e) <u>Changes in Salary Reduction Agreement</u>.  A Participant may increase or decrease the percentage of salary reduction under his salary reduction agreement as of the first day of any payroll period or at such time as is provided by the Administrative Committee; provided that such increase is elected prior to the date to which it first relates in such time and manner as prescribed by the Administrative Committee.

(f) <u>Cessation of Salary Reduction Agreement</u>.  A Participant may elect to cease salary reductions under his salary reduction agreement or recommence salary reductions at any time; provided that such decrease or cessation is elected prior to the date to which it relates in such time and manner as prescribed by the Administrative Committee.

4.02     <u>Matching Contributions</u>.  Subject to the limitations in Article VI, each Employer shall make a Matching Contribution for each Plan Year to the Matching Account of each of its Covered Employees who, with respect to such Plan Year, is a Participant and has executed a salary reduction agreement in accordance with Section 4.01.  The Matching Contribution for a Plan Year shall be made in Company Stock in an amount equal to (a) with respect to Plan Years beginning on or after January 1, 2000, 100% of the first 5% of Compensation contributed as Before-Tax Contributions and

CONFIDENTIAL                                                    PFE ERISA 0002046

After-Tax Contributions, in the aggregate, made on behalf of or by, as applicable, the Participant with respect to the Plan Year, or (b) with respect to Plan Years beginning before January 1, 2000, 50% of the first 5% of Compensation contributed as Before-Tax Contributions made on behalf of or by, as applicable, the Participant with respect to the Plan Year. Matching Contributions shall be credited to the ESOP Accounts of the Participants on whose behalf they were made.

4.03    Additional Matching Contributions. With respect to Plan Years beginning before January 1, 1999, subject to the limitations in Article VI, each Employer could make an Additional Matching Contribution for each Plan Year to the Matching Account of each of its Covered Employees who, with respect to such Plan Year, was a Participant and had executed a salary reduction agreement in accordance with Section 4.01(d). The amount of such Matching Contribution for a Plan Year, if any, was determined by the Board, in its sole discretion. With respect to Plan Years beginning on or after January 1, 1999, no Additional Matching Contributions may be made to the Plan. Additional Matching Contributions were credited to the Matching Accounts of the Participant on whose behalf they are made.

4.04    Contribution Attributable to Military Service. If a Participant returns to employment with the Employer following a period of service in the Armed Forces of the United States for which an Employer is required to give reemployment rights by law, the Employer contributions to the Plan with respect to such period shall be as follows:

(a) During the period that begins on the date of the Participant's return to employment and lasts for the lesser of the product of 3 multiplied by the applicable period of military service or five years, the Participant may elect a Compensation reduction in return for corresponding:

(1)    Before-Tax Contributions on his behalf up to the amount of Before-Tax Contributions that could have been made; and

(2)    After-Tax Contributions up to the amount he could have made

had he continued to be employed and received Compensation during the applicable period of military service.

(b) The Employer shall contribute to the Plan, on behalf of each Participant who has been credited with Before-Tax Contributions or After-Tax Contributions under subsection (a), Matching Contributions equal to the amount of Matching Contribution that would have been required under Section 4.02 had such Before-Tax Contributions and After-Tax Contributions been made during the applicable period of military service.

A Participant who is entitled to a contribution pursuant to this Section 4.04 shall not be entitled to receive corresponding retroactive earnings attributable to such contribution

CONFIDENTIAL                                                          PFE ERISA 0002047

nor shall he be entitled to participate in the allocation of any forfeiture that occurred during his period of military service.  The limitations under Sections 6.01 and 6.05 are applicable to contributions made pursuant to this Section 4.04 for the Plan Year to which the contributions relate.  The limitations under Sections 6.02, 6.03, and 6.04 shall not apply to contributions made pursuant to subsections (a) or (b) of this Section 4.04.

    4.05      Timing of Contributions.

        (a) Before-Tax Contributions and After-Tax Contributions shall be made to the Fund as soon as administratively practicable after the close of the payroll period to which they relate, but in no event later than the date prescribed under applicable regulations.

        (b) Matching Contributions shall be made to the Fund no later than the last date on which amounts so paid may be deducted for federal income tax purposes by the contributing Employer for the taxable year in which the Plan Year ends; provided, however, that in no event will the Matching Contribution be allocated to a Participant later than the Valuation Date coincident with or immediately preceding his Benefit Commencement Date.

    4.06      Recovery of Employer Contributions.  The Employer may recover its contributions under the Plan as follows:

        (a) if a contribution is made by an Employer under a mistake of fact, the excess of the amount contributed over the amount that would have been contributed had there not occurred a mistake of fact may be recovered by the Employer within one year after payment of the contribution; or

        (b) if the contribution is conditioned upon its deductibility under section 404 of the Code, the contribution may be recovered, to the extent a deduction is disallowed, within one year after the disallowance.

Earnings attributable to an excess contribution may not be recovered by the Employer.  Any losses attributable to the excess contribution shall reduce the amount the Employer may recover.

    4.07      Rollover Contributions.  With the approval of the Administrative Committee, a Participant may contribute to a Rollover Account all or a portion of the amount payable to the Participant (a) as an eligible rollover distribution from a qualified plan (as defined under section 401(a)(31)(C) of the Code), or (b) from an individual retirement account or annuity that received a qualifying rollover contribution from a qualified plan; provided that the amount contributed to the Rollover Account shall exclude an amount equal to the Participant's after-tax contributions to the qualified plan.  Any payment to the Plan pursuant to this Section 4.08 shall be made as a direct rollover that satisfies section 401(a)(31) of the Code or shall be made to the Plan within 60 days

CONFIDENTIAL

PFE ERISA 0002048

after the Participant's receipt of the distribution from the plan or individual retirement arrangement in such manner as may be approved by the Administrative Committee.

**ARTICLE V**

**ESOP PROVISIONS**

5.01   Exempt Loans.

(a) Investment Committee Direction.  The Investment Committee may direct the Trustee of the ESOP Trust to enter into one or more Exempt Loans to finance the acquisition of Preferred Stock for the ESOP Trust at any time.  The Investment Committee may direct the Trustee to refinance an existing Exempt Loan at any time.

(b) Terms of Exempt Loan.  The terms of any Exempt Loan shall comply with each of the following requirements:

(1)   the terms shall be as favorable to the Plan as the terms of a comparable loan negotiated at arm's length by independent parties;

(2)   the interest rate, spread, or formula shall be no more than a reasonable interest rate considering all relevant factors including the amount and duration of the Exempt Loan, the security and guarantee involved, if any, the credit standing of the Plan and the generator of the Exempt Loan, if any; and the interest rate prevailing for comparable loans;

(3)   except as provided in (6) below, the Exempt Loan shall be without recourse against the Plan;

(4)   the Exempt Loan must be for a specific term;

(5)   the Exempt Loan may not be payable at the demand of any person except in the case of default;

(6)   the only asset of the Plan that may be given as collateral on the Exempt Loan are shares of Preferred Stock acquired with the proceeds on the Exempt Loan or Preferred Stock used as collateral for a prior Exempt Loan, which prior loan is repaid with the proceeds of the same Exempt Loan;

(7)   no person entitled to payment under the Exempt Loan shall have any right to assets of the Plan other than collateral given for that Exempt Loan, contributions made to the Plan (other than contributions of employer securities) to enable it to meet its obligations under the Exempt Loan and earnings attributable to such collateral and such contributions, including dividends on allocated Preferred Stock to the extent permitted by the law ("Eligible Earnings");

CONFIDENTIAL                                                                                   PFE ERISA 0002049

(8)      the value of Plan assets transferred in satisfaction of the Exempt Loan upon an event of default shall not exceed the amount of the default;

(9)      if the lender is a "disqualified person" (as such term is defined in section 4975(e) of the Code), or a "party in interest" (as such term is defined in section 3(14) of ERISA), Plan assets may only be transferred upon default and only upon and to the extent of the failure of the Plan to meet the payment schedule of the Exempt Loan;

(10)     upon payment of any portion of the balance due on the Exempt Loan, the assets pledged as collateral for such portion shall be released from encumbrance and transferred to the Released and Unallocated Subfund in accordance with Section 5.03;

(11)     payments made from the ESOP Trust with respect to the Exempt Loan during a Plan Year shall not exceed an amount equal to the sum of amounts contributed to the Plan to pay off an Exempt Loan by the Employers and Eligible Earnings (as defined in paragraph (7) above), less any such payments made in prior Plan Years.  Such contributions and earnings shall be accounted for separately in the books of accounts of the Plan maintained by the Investment Committee or the ESOP Trustee until the Exempt Loan is repaid; and

(12)     except as provided in Article VII, or as otherwise required by applicable law, no Company Stock acquired with the proceeds of an Exempt Loan may be subject to a put, call, or other option or buy-sell or similar arrangement while held by, and when distributed from, the Plan.

(c) Any Exempt Loan must be primarily for the benefit of Participants and their Beneficiaries.

(d) Notwithstanding any other provision of the Plan or the Trust, all proceeds of an Exempt Loan shall be used, within a reasonable time after receipt by the ESOP Trust, only for any or all of the following purposes:

(1)      to acquire Preferred Stock;

(2)      to repay the same Exempt Loan; or

(3)      to repay any previous Exempt Loan.

5.02     Repayment of Exempt Loan.  Subject to the limitations set forth in Article VI and after application of dividends and forfeitures in accordance with Sections 7.06 and 8.02(b), with respect to each Plan Year in which an Exempt Loan is outstanding, the Investment Committee shall direct the Employer to make a payment in cash to the ESOP Trustee in such amount as necessary for the ESOP Trustee to make

CONFIDENTIAL                                              PFE ERISA 0002050

the principal and interest payments due on any Exempt Loans outstanding in the Plan Year.

5.03    Release of Preferred Stock from Suspense Subfund.  Preferred Stock acquired for the ESOP Trust with the proceeds of an Exempt Loan shall be released from the Suspense Subfund as the Exempt Loan is repaid in accordance with the provisions of subsections (a), (b), (c), (d), and (e) below.

(a) For each Plan Year until the Exempt Loan is fully repaid, the number of shares of Preferred Stock released from the Suspense Subfund shall equal the number of unreleased shares of Preferred Stock immediately before such release for the current Plan Year multiplied by the "Release Fraction." As used herein, the term "Release Fraction" shall remain a fraction, the numerator of which is the amount of principal and interest paid on the Exempt Loan for such current Plan Year and the denominator of which is the sum of the numerator plus the principal and interest to be paid on such Exempt Loan for all remaining years in the term of the Exempt Loan (determined without reference to any possible extensions or renewals thereof). For purposes of computing the denominator of the Release Fraction, if the interest rate on the Exempt Loan is variable, the interest to be paid in subsequent Plan Years shall be calculated by assuming that the interest rate in effect as of the end of the applicable Plan year will be the interest rate in effect for the remainder of the term of the Exempt Loan. Notwithstanding the foregoing, in the event such Exempt Loan shall be repaid with the proceeds of a subsequent Exempt Loan (the "Substitute Loan"), such repayment shall not operate to release all such Preferred Stock in the Suspense Subfund, but, rather, such release shall be effected pursuant to the foregoing provisions of this subsection (a) on the basis of payments of principal and interest on such Substitute Loan.

(b) If required by any pledge or similar agreement, or if permitted by such pledge or agreement and required by the Board, then, in lieu of applying the provisions of subsection (a) hereof with respect to an Exempt Loan, Preferred Stock shall be released from the Suspense Subfund as the principal amount of such Exempt Loan is repaid (without regard to interest payments), provided the following three conditions are satisfied:

(1)    The Exempt Loan shall provide for annual payments of principal and interest at a cumulative rate that is not less rapid at any time then level annual payments of such amounts for 10 years;

(2)    The interest portion of any payment shall be disregarded only to the extent it would be treated as interest under standard loan amortization tables; and

(3)    If the Exempt Loan is renewed, extended or refinanced, the sum of the expired duration of the Exempt Loan and the renewal, extension or new Exempt Loan period shall not exceed 10 years.

1-PH/1128363.11                                    21

CONFIDENTIAL

PFE ERISA 0002051

(c) If at any time there is more than one Exempt Loan outstanding, then separate accounts shall be established under the Suspense Subfund for each such Exempt Loan.  Each Exempt Loan for which a Separate account is maintained shall be treated separately for purposes of the provisions governing the release of Preferred Stock from the Suspense Subfund under this Section 5.03 (including for purposes of determining whether Section 5.03(a) or Section 5.03(b) governs the release of Preferred Stock from any particular Suspense Subfund) and for purposes of the provisions governing the application of Employer contributions to repay an Exempt Loan under Section 5.02.

(d) All Preferred Stock released from the Suspense Subfund during any Plan Year shall be transferred to the Released and Unallocated Subfund.

(e) All Preferred Stock held in the Released and Unallocated Subfund shall be allocated among Participants in accordance with Section 5.04.

5.04    Allocation of Preferred Stock Released from Released and Unallocated Subfund.

(a) Preferred Stock held in the Released and Unallocated Subfund shall be allocated by the Investment Committee as of the last day of that Plan Year to the ESOP Accounts of Participants who are eligible for an allocation of Matching Contributions under Section 4.02 in the manner prescribed under Section 4.02.

(b) Notwithstanding subsection (a), shares of Preferred Stock released from the Suspense Subfund by reason of the application of dividends on Preferred Stock allocated to ESOP Accounts to repay an Exempt Loan shall be allocated in accordance with Section 7.06(a).

(c) Shares of Preferred Stock released from the Suspense Subfund by reason of the application of dividends on Preferred Stock held in the Released but Unallocated Subfund and Suspense Subfund to repay an Exempt Loan shall be allocated in accordance with Section 7.06(b).

5.05    Limitations on ESOP Allocations to Certain Participants.

(a) If more than 1/3 of the Company's contributions for a Plan Year which are deductible under section 404(a)(9) of the Code would be allocated, in the aggregate, to the ESOP Accounts of Participants who are Highly Compensated Employees, then such allocations to the ESOP Accounts of such Participants shall be reduced, pro rata, in an amount sufficient to reduce the amounts allocated to the ESOP Accounts of such Participants to an amount not in excess of 1/3 of such deductible contributions with respect to such Plan Year; and

(b) Any Company Stock which is prevented from being allocated due to the restriction contained in subsection (a) of this Section 5.05 shall be allocated as of

CONFIDENTIAL

PFE ERISA 0002052

the last day of the Plan Year pursuant to Section 5.01 and 5.04 as though those Participants who are Highly Compensated Employees did not participate in the Plan.

5.06    Nonleveraged ESOP. Effective January 1, 2002:

(a) all funds that were held in a Participant's Common Stock Investment Account as of December 31 (or such other date as determined by the Administrative Committee or its designee) of the previous year (the "Employee ESOP Funds") that were not otherwise previously part of the ESOP portion of the Plan shall be part of the ESOP portion of the Plan as of the first day of the current Plan Year;

(b) Participants may diversify out of the Employee ESOP Funds at least as rapidly as provided in Section 7.03(b) of the Plan;

(c) the Employee ESOP Funds may be voted in the manner provided in Section 7.05 of the Plan;

(d) cash dividends paid with respect to shares held in the Employee ESOP Funds shall be paid to the Plan and, at the affirmative election of the Participant, distributed to the Participants within 90 days of the end of the Plan Year;

(e) cash dividends paid with respect to shares held in the Employee ESOP Funds shall be invested in the Participant's Common Stock Investment Account until they are distributed or otherwise transferred to another investment by the Participant.

(f) notwithstanding anything herein to the contrary, a Participant shall at all times be fully vested in any cash dividends that are reinvested pursuant to paragraph (e) immediately above.

## ARTICLE VI

## LIMITATIONS ON EMPLOYER CONTRIBUTIONS

6.01    Dollar Limitation on Before-Tax Contributions.

(a) The Before-Tax Contribution made on behalf of a Participant for a calendar year shall not exceed the dollar limit specified under section 402(g) of the Code. This dollar limit shall be reduced by the amount, if any, contributed on behalf of the Participant under any other qualified cash or deferred arrangement, simplified employee pension or annuity established under section 403(b) of the Code for the calendar year.

(b) In the event the dollar limit described in subsection (a) is exceeded for a Participant, the Administrative Committee shall direct the Trustee to distribute the excess to the Employee by the April 15 following the end of the calendar year with respect to which the excess occurred. The excess returned to an Employee in

CONFIDENTIAL

PFE ERISA 0002053

accordance with this subsection (b), shall be adjusted for any income or loss thereon up to the date of the distribution of the excess, using the Plan's method for allocating income and loss.

6.02    Limitation on Before-Tax Contributions for Highly Compensated Employees.

(a) For each Plan Year the average of the Actual Deferral Percentages for Participants who are Highly Compensated Employees shall be compared to the average of the Actual Deferral Percentages for the other Participants for the preceding Plan Year. The average of the Actual Deferral Percentages for Participants who are Highly Compensated Employees shall not exceed the greater of:

(1)    1.25 multiplied by the average of the Actual Deferral Percentages for Participants who are Non-Highly Compensated Employees for (i) with respect to the Plan Years beginning January 1, 1998 and January 1, 1999, the preceding Plan Year, or (ii) with respect to all other Plan Years, the current Plan Year; or

(2)    the lesser of:

(A)    two multiplied by the average of the Actual Deferral Percentages for Participants who are Non-Highly Compensated Employees for (i) with respect to the Plan Years beginning January 1, 1998 and January 1, 1999, the preceding Plan Year, or (ii) with respect to all other Plan Years, the current Plan Year, or

(B)    two plus the average of the Actual Deferral Percentages for Participants who are Non-Highly Compensated Employees for (i) with respect to the Plan Years beginning January 1, 1998 and January 1, 1999, the preceding Plan Year, or (ii) with respect to all other Plan Years, the current Plan Year.

In the event that the Plan satisfies the requirements of Code section 401(a)(4), 401(k) or 410(b) only if aggregated with one or more other qualified retirement plans, or if one or more other qualified retirement plans satisfy the requirements of these sections only if aggregated with the Plan, then this subsection (a) shall be applied as if all such plans were a single plan.

(b) If in the Plan Year, the average of the Actual Deferral Percentages for Participants who are Highly Compensated Employees exceeds the limit in subsection (a) for a Plan Year, the Administrative Committee shall:

(1)    determine the amount by which the Actual Deferral Percentage for Highly Compensated Employee or Employees with the highest Actual Deferral Percentage or Percentages for the Plan Year would need to be reduced to comply with the limit in subsection (a);

CONFIDENTIAL                                                              PFE ERISA 0002054

(2)      convert the excess percentage amount determined under clause (1) into a dollar amount; and

(3)      reduce the Before-Tax Contributions of the Highly Compensated Employee with the greatest dollar amount of Before-Tax Contributions made on their behalf with respect to the Plan Year by the lesser of (A) the amount by which the dollar amount of the affected Highly Compensated Employee's Before-Tax Contributions exceeds the dollar amount of the Highly Compensated Employee with the next highest dollar amount of Before-Tax Contributions, or (B) the amount of the excess dollar amount determined under clause (2); and

(4)      direct the Trustee to return the excess Before-Tax Contributions, as adjusted in accordance with subsection (d), to the individuals from whose Accounts the excess Before-Tax Contributions were obtained within two and one-half months following the close of the Plan Year, if administratively practicable, but in no event later than the close of the following Plan Year.

(c) To the extent that a Matching Contribution relates to excess Before-Tax Contributions returned pursuant to subsection (b), such Matching Contributions, as adjusted in accordance with subsection (d), shall be forfeited immediately.  Amounts forfeited during the Plan Year shall be used to reduce future Matching Contributions made by the Employer.

(d) The excess Before-Tax Contributions returned to a Participant pursuant to subsection (b) and any Matching Contributions forfeited pursuant to subsection (c) shall be adjusted for any income or loss thereon up to the date of distribution or forfeiture, as applicable, using the Plan's method for allocating income and loss.

6.03      Limitation on Matching Contributions and After-Tax Contributions for Highly Compensated Employees.

(a) For each Plan Year the average of the Actual Contribution Percentages for Participants who are Highly Compensated Employees shall be compared to the average of the Actual Contribution Percentages for the other Participants.  The average of the Actual Contribution Percentages for Participants who are Highly Compensated Employees shall not exceed the greater of:

(1)      1.25 multiplied by the average of the Actual Contribution Percentages for Participants who are Non-Highly Compensated Employees for (i) with respect to the Plan Years beginning January 1, 1998 and January 1, 1999, the preceding Plan Year, or (ii) with respect to all other Plan Years, the current Plan Year; or

(2)      the lesser of:

CONFIDENTIAL                                                    PFE ERISA 0002055