# Exhibit 1 – Part 2

(A)      two multiplied by the average of the Actual Contribution Percentages for Participants who are Non-Highly Compensated Employees for (i) with respect to the Plan Years beginning January 1, 1998 and January 1, 1999, the preceding Plan Year, or (ii) with respect to all other Plan Years, the current Plan Year, or

(B)      two plus the average of the Actual Contribution Percentages for Participants who are Non-Highly Compensated Employees for (i) with respect to the Plan Years beginning January 1, 1998 and January 1, 1999, or (ii) with respect to all other Plan Years, the current Plan Year, the preceding Plan Year.

In the event that the Plan satisfies the requirements of Code section 401(a)(4), 401(m), or 410(b) only if aggregated with one or more other qualified retirement plans, or if one or more other qualified retirement plans satisfy the requirements of these sections only if aggregated with the Plan, then this subsection (a) shall be applied as if all such plans were a single plan.

(b) If in any Plan Year the average of the Actual Contribution Percentages for Participants who are Highly Compensated Employees exceeds the limit in subsection (a) for a Plan Year, the Committee shall:

(1)      determine the amount by which the Actual Contribution Percentage for Highly Compensated Employee or Employees with the highest Actual Contribution Percentage or Percentages for the Plan Year would need to be reduced to comply with the limit in subsection (a);

(2)      convert the excess percentage amount determined under clause (1) into a dollar amount; and

(3)      reduce the Matching Contributions and After-Tax Contributions of the Highly Compensated Employee with the greatest dollar amount of Matching Contributions and After-Tax Contributions made on their behalf with respect to the Plan Year by the lesser of (A) the amount by which the dollar amount of the affected Highly Compensated Employee's Matching Contributions (and, with respect to Plan Years beginning before January 1, 1999, Additional Matching Contributions) and After-Tax Contributions exceeds the dollar amount of the Highly Compensated Employee with the next highest dollar amount of Matching Contributions and After-Tax Contributions, or (B) the amount equal to the excess dollar amount determined under clause (2); and

(4)      direct the Trustee to return the vested excess Matching Contributions (and, with respect to Plan Years beginning before January 1, 1999, Additional Matching Contributions) and After-Tax Contributions, as adjusted in accordance with subsection (c), to the individuals from whose Accounts the vested excess Matching Contributions (and, with respect to Plan Years beginning before January 1, 1999, Additional Matching Contributions) After-Tax Contributions were obtained and forfeit the unvested excess Matching Contributions (and, with respect to

CONFIDENTIAL                                    PFE ERISA 0002056

Plan Years beginning before January 1, 1999, Additional Matching Contributions) and After-Tax Contributions within two and one-half months following the close of the Plan Year, if administratively practicable, but in no event later than the close of the following Plan Year.

(c) The excess Matching Contributions (and, with respect to Plan Years beginning before January 1, 1999, Additional Matching Contributions) and After-Tax Contributions returned to a Participant or forfeited pursuant to subsection (b) shall be adjusted for any income or loss thereon up to the date of distribution or forfeiture, as applicable, using the Plan's method for allocating income and loss.

6.04    Special Combined Limitation on Before-Tax Contributions and Matching Contributions for Highly Compensated Employees.

(a) If for any Plan Year the average of the Actual Deferral Percentages for Participants who are Highly Compensated Employees satisfies Section 6.02(a)(2) but not Section 6.02(a)(1), and the average of the Actual Contribution Percentages for Participants who are Highly Compensated Employees satisfies Section 6.03(a)(2) but not Section 6.03(a)(1), then in addition to the limitations in Sections 6.02 and 6.03, the sum of the average of the Actual Deferral Percentages for Participants who are Highly Compensated Employees and the average of the Actual Contribution Percentages for Participants who are Highly Compensated Employees shall not exceed the greater of:

(1)    the sum of:

(A)    1.25 multiplied by the greater of (i) the average of the Actual Deferral Percentages for Participants who are Non-Highly Compensated Employees for the preceding Plan Year, or (ii) the average of the Actual Contribution Percentages for Participants who are Non-Highly Compensated Employees; and

(B)    the lesser of:

(i)    two multiplied by the lesser of the average of the Actual Deferral Percentages for Participants who are Non-Highly Compensated Employees for the current Plan Year (or, with respect to the Plan Years beginning January 1, 1998 and January 1, 1999, the preceding Plan Year), or the average of the Actual Contribution Percentages for Participants who are Non-Highly Compensated Employees for the current Plan Year (or, with respect to the Plan Years beginning January 1, 1998 and January 1, 1999, the preceding Plan Year); or

(ii)    two plus the lesser of the average of the Actual Deferral Percentages for Participants who are Non-Highly Compensated Employees for the current Plan Year (or, with respect to the Plan Years beginning January 1, 1998 and January 1, 1999, the preceding Plan Year), or the average of the Actual Contribution Percentages for Participants who are Non-Highly Compensated

CONFIDENTIAL

PFE ERISA 0002057

Employees for the current Plan Year (or, with respect to the Plan Years beginning January 1, 1998 and January 1, 1999, the preceding Plan Year); or

    (2)    the sum of:

    (A)    1.25 multiplied by the lesser of (i) the average of the Actual Deferral Percentages for Participants who are Non-Highly Compensated Employees for the current Plan Year (or, with respect to the Plan Years beginning January 1, 1998 and January 1, 1999, the preceding Plan Year), or (ii) the average of the Actual Contribution Percentages for Participants who are Non-Highly Compensated Employees; and

    (B)    the greater of:

    (i)    two multiplied by the lesser of the average of the Actual Deferral Percentages for Participants who are Non-Highly Compensated Employees for the current Plan Year (or, for the Plan Years beginning January 1, 1998 and January 1, 1999, the preceding Plan Year), or the average of the Actual Contribution Percentages for Participants who are Non-Highly Compensated Employees for the current Plan Year; or

    (ii)    two plus the lesser of the average of the Actual Deferral Percentages for Participants who are Non-Highly Compensated Employees for the current Plan Year (or, for the Plan Years beginning January 1, 1998 and January 1, 1999, the preceding Plan Year), or the average of the Actual Contribution Percentages for Participants who are Non-Highly Compensated Employees for the current Plan Year (or, for the Plan Years beginning January 1, 1998 and January 1, 1999, the preceding Plan Year).

    (b) If the sum of the average of the Actual Deferral Percentages for Participants who are Highly Compensated Employees and the average of the Actual Contribution Percentages for Participants who are Highly Compensated Employees exceeds the limit in subsection (a) for a Plan Year, the Administrative Committee shall reduce the Before-Tax Contributions of Highly Compensated Employees in accordance with Section 6.02(b) and forfeit Matching Contributions attributable thereto in accordance with Section 6.02(c).

    6.05    <u>Limitations on Allocations</u>.

    (a) The maximum allowable addition to any Participant's Accounts for any Plan Year shall be the lesser of:

    (1)    $30,000 (or, as adjusted under section 415(d) of the Code); or

CONFIDENTIAL                                          PFE ERISA 0002058

(2)        25% of the Participant's Testing Compensation for the Plan Year.

For purposes of this Section 6.05, an addition shall include all contributions and forfeitures allocated to a Participant's Accounts for the Plan Year, other than Rollover Contributions.

For Plan Years beginning prior to January 1, 2000, if a Participant is also earning retirement benefits under a separate defined benefit plan or plans established by the Employer or an Affiliate, the benefits under such plan or plans shall be limited so that the sum of the "defined contribution fraction" and the "defined benefit fraction," as such terms are defined in section 415(e) of the Code, shall not exceed 1.0.

(b) If the addition to any Participant's Accounts under Sections 4.01, 4.02 and 4.03 for any Plan Year exceeds the maximum annual allowable addition to such Participant's Accounts under subsection (a) after first taking into account any additions on the Participant's behalf under any other qualified defined contribution plan or any funded welfare plan maintained by the Employer, the excess attributable to the Matching Contributions allocated to the Participant's Matching Account for such Plan Year shall be held in a suspense account (which shall share in the investment gains and losses of the Fund) by the Trustee until the following Plan Year. Such amounts shall be used in the following Plan Year to reduce the Matching Contributions otherwise payable by the Employer by which the Participant is employed in such subsequent Plan Year. If there is an excess remaining after the reduction of Matching Contributions, the excess attributable to the Before-Tax Contributions made on the Participant's behalf for such Plan Year shall be distributed to the Participant; provided, however that such return shall not be deemed a distribution under Article X. No fund assets may be held in an unallocated account except to the extent failure to hold such assets unallocated would violate this Section or to the extent held in the Released and Unallocated Subfund.

## ARTICLE VII

## INVESTMENT AND VALUATION OF ACCOUNTS

7.01      Investment Direction by Participants. Each Participant shall direct the Trustee to invest the amounts credited to his Accounts, other than amounts held in his ESOP Account which have not been diversified in accordance with Section 7.03(b), in one or more Investment Vehicles. A Participant's investment direction shall be made at the time and in the manner prescribed by the Administrative Committee. If any balance remains in a Participant's Accounts after his death, his Beneficiary shall direct the investment of the amounts credited to the Accounts as though the Beneficiary were the Participant. To the extent required by a Qualified Domestic Relations Order, the alternate payee of a Participant shall direct the investment of the amounts credited to the Participant's Accounts as though the alternate payee were the Participant. To the extent a Participant, Beneficiary or alternate payee directs the investment of the

CONFIDENTIAL                                                                      PFE ERISA 0002059

amounts credited to his Accounts, this Plan is intended to be subject to section 404(c) of ERISA and the regulations issued thereunder.

      7.02      <u>Investment Vehicles</u>. The Investment Committee may designate, in its sole discretion, one or more Investment Vehicles under the Trust for the investment of Participants' Accounts; provided, however, that one such Investment Vehicle shall be the Common Stock Investment Account. The Investment Committee, in its sole discretion, may from time to time designate or establish new Investment Vehicles or terminate existing Investment Vehicles. The Company or its delegate shall comply with, or monitor compliance with, all disclosure and other responsibilities described under United States Department of Labor regulations sections 2550.404(c)-1(b)(2)(i)(A) and (b)(2)(i)(B)(l), except that the Trustee shall monitor compliance with those procedures established to provide confidentiality of information relating to the decrease of voting and tender rights by Participants. If the Company determines that a situation has potential for undue influences by the Company, the Company shall direct an independent party to perform such activities as are necessary to ensure the confidentiality of the rights of the Participants.

      7.03      <u>Investment of ESOP Account</u>. Except as otherwise provided in subsections (a) and (b) below, amounts held in a Participant's ESOP Account shall be invested exclusively in Preferred Stock.

      (a) <u>Conversion of Preferred Stock</u>. The shares of Preferred Stock held in a Participant's ESOP Account will be converted into shares of Common Stock upon the earlier of (1) the distribution of such Preferred Stock under Article X, or (2), with respect to the portion of the Participant's ESOP Account diversified, the Participant's diversification of his ESOP Account in accordance with subsection (b).

      (b) <u>Diversification of ESOP Account</u>.

      (1)      A Participant who (A) attained age 55 but has not yet attained age 60, and (B) has been credited with ten or more Years of Service may elect to invest an amount equal to up to the value of 25% of the total number of shares of Preferred Stock held in his ESOP Account (less the number of shares of Preferred Stock previously diversified, if any) to one or more of the Investment Vehicles provided in accordance with Section 7.02 in the manner prescribed pursuant to Section 7.01; and

      (2)      A Participant who (A) attained age 60 and (B) has been credited with ten or more Years of Service may elect to invest an amount equal to up to the value of 50% (in whole percentages of 5% or more) of the total number of shares of Preferred Stock not previously diversified, if any, to one or more of the Investment Vehicles provided in accordance with Section 7.02 in the manner prescribed pursuant to Section 7.01.

Elections made pursuant to this subsection (b) must be made in the time and manner prescribed by the Administrative Committee and shall be based on the balance of the

1-PH/1128363.11

30

CONFIDENTIAL

PFE ERISA 0002060

ESOP Account as of the Valuation Date as of which the diversification election is effective.

7.04     Investment and Reinvestment of Company Stock Fund.  The Company Stock Fund is comprised of assets invested in the Common Stock Investment Account and assets held in Participants' ESOP Accounts.  Funds held in the Company Stock Fund shall be invested and reinvested exclusively in Company Stock, except to the extent that cash is held to facilitate purchases and sales within the Company Stock Fund.  Investments in the Company Stock Fund shall be accounted for the basis of units of the Company Stock Fund.  Shares of Company Stock and cash received by the Company Stock Fund that are attributable to dividends, stock splits, or to any reorganization or recapitalization of Pharmacia Corporation (or prior to the effective date of the merger of the Company and Pharmacia Corporation (formerly Monsanto Company), Pharmacia & Upjohn Company) shall remain in, or be invested in, as applicable, the Company Stock Fund and allocated to Accounts in proportion to the number of units of the Company Stock Fund held in such Accounts.  The transfer taxes, brokerage fees, and other expenses incurred in connection with the purchase, sale, or distribution of Company Stock shall be paid by the Company Stock Fund, and shall be deemed part of the cost of such Company Stock, or deducted in computing the sale proceeds therefrom, as the case may be, unless paid by an Employer.  The Investment Committee shall determine to what extent a Participant shall bear any other administrative fee incurred by the Plan in accordance with the transfer of the Participant's interest in the Company Stock Fund and provide appropriate written notice to such Participants.

7.05     Voting and Tendering of Company Stock.  The voting and tendering of Company Stock held in the Company Stock Fund shall be subject to the following:

(a) Applicable Shares.  For purposes of this subsection, shares of Company Stock shall be deemed to be allocated and credited to a Participant's Before-Tax Account, After-Tax Account, ESOP Account, Matching Account, or Rollover Account, as applicable, in an amount to be determined based on the balance in such Account on the Accounting Date coincident with or next preceding the record date of any vote or tender offer and the closing price of Company Stock on such Accounting Date or if not traded on that date, on the business day on which shares of Company Stock were last traded before that Accounting Date.  The number of shares of Company Stock credited to a Participant's ESOP Account on such Accounting Date shall be deemed to include anticipated allocations of such Company Stock pursuant to the provisions of subsections 5.03 or 5.04.

(b) Voting of Common Stock.  Each Participant who has Common Stock credited to his Before-Tax Account, After-Tax Account, ESOP Account, or Rollover Account shall be given notice by the Trustee of the date and purpose of each meeting of the stockholders of Pharmacia Corporation (or prior to the effective date of the merger of the company and Pharmacia Corporation (formerly Monsanto Company), Pharmacia & Upjohn, Inc.) at which shares of Common Stock are entitled to be voted, and

CONFIDENTIAL

PFE ERISA 0002061

instructions shall be requested from each such Participant as to the voting at the meeting of such Common Stock.  If the Participant furnishes instructions within the time specified in the notification given to him, the Trustees shall vote such Common Stock in accordance with the Participant's instructions.  Shares of Common Stock that have not been credited to any Participant's Before-Tax Account, After-Tax Account, ESOP Account, Matching Account, or Rollover Account or for which no instructions were timely received by the Trustees, whether or not credited to the Account of any Participant shall be voted by the Trustee in the same proportion that the allocated and voted shares of Common Stock have been voted by Participants.  The Investment Committee shall establish procedures under which notices shall be furnished to Participants as required by this subsection (b) and under which the Participants' instructions shall be furnished to the Trustees.

(c) Tendering of Company Stock.  Each Participant who has shares of Company Stock credited to his Before-Tax Account, After-Tax Account, ESOP Account, Matching Account, or Rollover Account shall be furnished notice of any tender offer for, or a request or invitation for tenders of, Company Stock made to the Trustees. Instructions shall be requested from each such Participant as to the tendering of shares of Company Stock credited to his Account and for this purpose Participants shall be provided with a reasonable period of time in which they may consider any such tender offer for, or request or invitation for tenders of, Company Stock made to the Trustees. The Trustees shall tender such Company Stock as to which the Trustees have received instructions to tender from Participants within the time specified.  Company Stock credited to Accounts as to which the Trustees have not received instructions from Participants shall not be tendered.  Shares of Company Stock that have not been credited to any Participant's Account shall be tendered by the Trustee in the same proportion that the allocated and tendered shares of Company Stock have been tendered by Participants.  The Investment Committee shall establish procedures under which notices shall be furnished to Participants as required by this subsection (c) and under which the Participants' instructions shall be furnished to the Trustee.  In carrying out their responsibilities under this subsection the Trustees may rely on information furnished to them by (or under procedures established by) the Investment Committee.

(d) Number of Shares.  For all purposes of this Section 7.05, the number of shares of Common Stock held in a Participant's Before-Tax Account, After-Tax Account, Matching Account, ESOP Account, or Rollover Account which are invested in the Common Stock Investment Account shall be the number of shares of Common Stock represented by the number of units held in such Accounts after reducing such number of units by the number of units in such Accounts which represent cash.

(e) Insider Restrictions.  With respect to Participants subject to section 16 of the Securities Exchange Act of 1934 (the 'Exchange Act') or subject to any insider trading restrictions of the Exchange Act, the Investment Committee shall be authorized to limit or restrict any transactions in any Investment Vehicle that invests in Company Stock as necessary to assure that such Participants are in compliance with, and appear

CONFIDENTIAL                                                    PFE ERISA 0002062

to be in compliance with, section 16 of the Exchange Act and the Exchange Act's insider trading restrictions.

      7.06        <u>Dividends, Splits and Recapitalizations.</u>

      (a) Cash dividends with respect to Company Stock in a Participant's ESOP Account shall be applied toward repayment of any Exempt Loan.  Company Stock held in the Released and Unallocated Subfund which is equal in value to such cash dividends shall be allocated to the Participants' ESOP Accounts.  For the purposes of such allocation, the value of the Company Stock shall be based upon the following:

      (1)      with respect to cash dividends attributable to Company Stock allocated to a Participants' ESOP Account prior to January 1, 2000, the cost of the Company Stock to the ESOP Trustee; and

      (2)      with respect to cash dividends attributable to Company Stock allocated to a Participant's ESOP Account on or after January 1, 2000, based upon the fair market value of the Company Stock at the time of allocation.

      (b) Cash dividends with respect to Company Stock held in the Suspense Subfund or the Released and Unallocated Subfund shall be used to repay any Exempt Loan.

      (c) Cash dividends with respect to Company Stock held in any Account other than an ESOP Account, Suspension Subfund, or Released and Unallocated Subfund shall be allocated among such accounts in proportion to the number of shares of the same class of Company Stock held in such Accounts.

      (d) Any shares of Company Stock received by the Trustee as a result of a stock split, stock dividend, conversion or as a result of a reorganization or other recapitalization of the Company shall be allocated as of the date received by the Trustee in the same manner as the Company Stock to which they are attributable is then allocated.

Such allocation shall take place as of the date the dividends on Company Stock are credited under the Plan.  The full amount of the cash dividends described in Section 7.06(a) and (b) will be transferred immediately to the Suspense Subfund for use in repayment of the Exempt Loan.  The shares of Company Stock allocated each year to Participant's ESOP Account pursuant to this Section 7.06 shall in no event have a fair market value of less than the amount of the cash dividends on Company Stock in the Participant's ESOP Account which are applied toward repayment of the Exempt Loan. To the extent necessary to make the allocation of Company Stock to Participants' ESOP Accounts as described in this Section 7.06, Company Stock released as a result of Exempt Loan payment in the next following Plan Year may be retroactively allocated, as long as the Exempt Loan payment  and such retroactive allocation are made no later than the time prescribed by law for the Company to file its federal tax return for the

CONFIDENTIAL                           PFE ERISA 0002063

taxable year of the Company that coincides with the Plan Year for which the allocation is made, including any extensions of time thereof.  The provisions of this Section 7.06 shall be applied on a uniform basis under rules adopted by the Investment Committee.

7.07    Valuation of the Fund.  As of each Valuation Date, any increase or decrease in the fair market value of each Investment Vehicle (net after deduction of liabilities) since the preceding Valuation Date shall be credited to or deducted from the Accounts, if any, of each Participant.  The allocation for each Investment Vehicle shall be made in the proportion that the balance in each Account invested in the Investment Vehicle as of the Valuation Date bears to the aggregate balance in all Accounts invested in the Investment Vehicle on that date.  For purposes of the preceding sentence, the Employer's contributions to the Plan for the current year shall be excluded.  The fair market value of investments shall be determined in accordance with any reasonable method permitted under regulations prescribed by the United States Department of the Treasury and such reasonable and uniform rules as the Trustee may adopt.

## ARTICLE VIII

## VESTING

8.01    Vesting Schedule.

(a) A Participant shall at all times be fully vested in the balance of his Before-Tax Account, After-Tax Account, and Rollover Account.  Effective for Plan Years beginning on or after January 1, 2000, a Participant shall at all times be fully vested in the balance of his ESOP Account and Matching Account.

(b) Except as otherwise provided under subsection (c), for Plan Years beginning before January 1, 2000, a Participant shall have his vested interest in his ESOP Account and Matching Account determined under the following schedule:

| Years of Participation | Vested Interest |
|---|---|
| Less than 1 | 0% |
| 1 | $33\alpha$% |
| 2 | $66\beta$% |
| 3 | 100% |

A Participant's interest in his Accounts shall in any case become 100% vested (1) upon his reaching his Normal Retirement Age, (2) upon his occurrence of a Disability or (3) upon his death prior to the termination of his employment with the Employer.

(c)    Notwithstanding the foregoing, a Participant who was a participant in the Sugen Plan or the Pharmacia Plan shall at all times be fully vested in the balance of his

CONFIDENTIAL

PFE ERISA 0002064

Matching Account and, to the extent applicable, his Discretionary Account and Special Account.

       8.02       <u>Forfeitures</u>.

       (a) The unvested portion of a Participant's Accounts shall be forfeited as of the last day of the Plan Year following the Plan Year in which such Participant incurs five consecutive Breaks-in-Service.

       (b) Amounts forfeited in accordance with subsection (a) with respect to a Plan Year shall be used to pay proper expenses of the Plan and Trust and to reduce future Matching Contributions to the Plan.

## ARTICLE IX

## AMOUNT OF BENEFITS

       9.01       <u>Benefits Upon Termination of Employment</u>.  A Participant who incurs a termination of employment with all Employers for a reason other than death shall be entitled to a distribution of the entire vested balance of his Accounts as of the Valuation Date coincident with or immediately preceding his Benefit Commencement Date.

       9.02       <u>Death Benefits</u>.  If a Participant's service is terminated by death, his Beneficiary shall be entitled to a distribution of the entire vested amount credited to the Participant's Accounts as of the Valuation Date coincident with or next following the Beneficiary's Benefit Commencement Date.

## ARTICLE X

## PAYMENT AND FORM OF BENEFITS

       10.01       <u>Form of Benefit Paid to Participant</u>.

       (a) Unless a Participant elects an optional form of benefit payment in accordance with subsection (b), any benefit due a Participant under Article IX shall be paid in a single sum.

       (b) Except as provided in subsection (c) and (d) below, a Participant whose vested Account balance exceeds $5,000 as of his Benefit Commencement Date may, in lieu of the single sum payment prescribed under subsection (a), elect an optional form of distribution; provided that such election must be in writing and made within the Notice Period in the manner prescribed by the Administrative Committee. With respect to a Benefit Commencement Date before March 22, 1999, the $5,000 threshold under this subsection shall take into account all amounts withdrawn or distributed prior to the Benefit Commencement Date.  The optional forms of distribution among which a Participant may elect shall be as follows:

CONFIDENTIAL

PFE ERISA 0002065

(1)      payment of substantially equal installments over a period specified by the Participant not to exceed the greater of 15 years or the joint life expectancy of the Participant and his Beneficiary; provided, however, that the Participant may elect in the time and manner prescribed by the Administrative Committee (A) to accelerate the installment payments, (B) to receive his remaining vested Account balance in a single sum, or (C) to temporarily suspend installment payments; or

(2)      an annuity for the life of the Participant; provided, however, that if the Participant is married on his Benefit Commencement Date, the annuity shall be a Qualified Joint and Survivor Annuity, and if the Participant is not married on his Benefit Commencement Date, the annuity shall be a single life annuity.

If a benefit has begun to be paid in installments, as provided under paragraph (1) the Participant shall continue to exercise investment direction with respect to his Accounts as provided under Section 7.01. Benefits payable from the Fund may be paid directly by the Fund or, at the discretion of the Administrative Committee, through the purchase of an annuity contract.

(c)      Notwithstanding subsection (b), a Participant who was a participant in the Pharmacia Plan and was also a prior plan participant in the Biotech Plan, and whose vested Account balance exceeds $5,000 as of his Benefit Commence Date may, in lieu of the single sum payment prescribed under subsection (a), elect an optional form of distribution; provided, that such election must be in writing and made within the Notice Period in the manner prescribed by the Administrative Committee. With respect to a Benefit Commencement Date before March 22, 1999, the $5,000 threshold under this subsection shall take into account all amounts withdrawn or distributed prior to the Benefit Commencement Date. The optional forms of distribution among which a Participant may elect shall be as follows:

(1)      An unmarried Participant who has separated from service as of a date that would have constituted early or normal retirement under the Biotech Plan, may elect to receive his benefits in substantially equal quarterly or annual installments.

(2)      A married Participant described in this subsection (c) who has separated from service with the Employer as of a date that would have constituted his early, normal or deferred retirement date under the Biotech Plan, will receive his benefit in the form of a Joint and 50% Survivor annuity unless a waiver in favor of a single sum payment, substantially equal quarterly or annual installments or a Joint and 100% Survivor Annuity is made in writing and consented to by such Participant's spouse. Such spousal consent must be notarized and witnessed by a Plan representative. For purposes of this Section (c)(2), a Joint and Survivor Annuity shall mean an annuity payable for the life of the Participant with a 50% or 100% survivor annuity payable to such Participant's spouse on the death of the Participant.

CONFIDENTIAL                                                                                    PFE ERISA 0002066

(d)     Notwithstanding any provisions of the Plan to the contrary, a Participant who (1) was a participant in the Pharmacia Plan and (2) was also a prior plan participant in the Adria Plan and whose vested Account balance exceeds $5,000 may, in lieu of the single sum payment prescribed under subsection (a) elect an optional form of distribution; provided that such election must be in writing and made within the Notice Period in the manner prescribed by the Administrative Committee. With respect to a Benefit Commencement Date before March 22, 1999, the $5,000 threshold under this subsection shall take into account all amounts withdrawn or distributed prior to the Benefit Commencement Date. The optional forms of distribution among which such a Participant may elect shall be as follows:

(1)     An unmarried Participant described in this subsection (d) who has separated from service with the Employer will receive his benefit in the form of a life annuity purchase or providing of an annuity over a period not to exceed the life of the Participant, the joint lives of the Participant and his designated Beneficiary, the life expectancy of the Participant, or the joint life expectancies of the Participant and his designated Beneficiary.

(2)     A married Participant described in this subsection 10.01(d) who has separated from service with the Employer will receive his benefit in the form of a Joint and 50% Survivor Annuity unless a waiver in favor of a single sum payment, a Joint and 75% Annuity, a Joint and 100% Survivor Annuity of the purchase or providing of an annuity over a period not to exceed the life of the Participant, the joint lives of the Participant and his designated Beneficiary, the life expectancy of the Participant, or the joint life expectancies of the Participant and his designated Beneficiary. Such waiver must be made in writing and consented to by such Participant's spouse. Such spousal consent must be notarized and witnessed by a Plan representative. For purposes of this Section 10.01(c)(2), a Joint and Survivor Annuity shall mean an annuity payable for the life of the Participant with a 50%, 75%, or 100% survivor annuity payable to such Participant's spouse on the death of the Participant.

10.02     Form and Payment of Death Benefit. If a Participant dies before his Benefit Commencement Date, any benefit due shall be paid to his Beneficiary in a single sum within one year of the Participant's date of death or, if the Beneficiary elects in the time and manner prescribed by the Administrative Committee, one of the optional forms of benefit payments described in Section 10.01(b). If a Participant dies after his Benefit Commencement Date, the death benefit shall be determined by the provisions of any payment form in force at the time of the Participant's death, and there shall be no additional benefits or surviving spouse's benefits payable under the Plan.

10.03     Put Options. If the Company Stock held under the ESOP Portion of the Plan is not readily tradable on an established securities market (within the meaning of section 409(h)(1)(B) of the Code), any Participant who is entitled to a distribution of such shares from the Plan shall have a right to require the Company to repurchase such shares in accordance with section 409(h)(1)(B) of the Code. Company Stock held under the ESOP Portion of the Plan shall not be subject to a put, call, or other option, or

CONFIDENTIAL                                                                   PFE ERISA 0002067

a buy-sell or similar arrangement either while held by the Plan or when distributed to or on account of a Participant whether or not the Plan is then an Employee Stock Ownership Plan.

10.04    Benefit Commencement Date.

(a) Except as provided under Section 10.06, if the Participant's vested Account balance as of his Benefit Commencement Date is $5,000 or less, his benefit under the Plan shall be paid in a single sum as soon as administratively practicable following the Valuation Date coinciding with or next following the date of the Participant's termination of employment with Employer; provided, however, that the automatic single sum distribution under this subsection (a) shall only be available if the Benefit Commencement Date occurs within two years of the date of the Participant's termination of employment with the Employer.

(b) Except as provided under Section 10.06, if (1) the Participant's vested Account balance as of his Benefit Commencement Date is greater than $5,000, or (2) the Participant terminated employment with the Employer more than two years before his Benefit Commencement Date, his benefit under the Plan shall be paid as soon as administratively practicable following the Plan Year in which he attains Normal Retirement Age.  If the date of the Participant's termination of employment with the Employer is before the Plan Year in which he attains Normal Retirement Age, however, the Participant may make a written election, in accordance with the procedure established by the Administrative Committee to have his benefit paid on the first day of any month following the month in which he terminated employment with the Employer.

(c) Notwithstanding subsections (a) and (b), in no event shall a Participant's benefit under the Plan be paid later than 60 days following the last day of the Plan Year in which the latest of the following events occurs:

(1) the Participant attains Normal Retirement Age, or

(2) the Participant terminates employment with the Employer.

10.05    Direct Rollovers.  In the event any payment or payments, excluding any amount not includible in gross income, to be made to a Distributee pursuant to this Article X would constitute an eligible rollover distribution, within the meaning of section 401(a)(31)(C) of the Code and the Treasury regulations thereunder (other than a distribution exempt from the mandatory withholding requirements under section 3405 of the Code and the regulations thereunder), such Distributee may elect, in accordance with this Section 10.05, that, in lieu of payment to the Distributee, all or part of such eligible rollover distribution be rolled over directly to the trustee or custodian of an eligible retirement plan, within the meaning of section 401(a)(31)(D) of the Code and the Treasury regulations thereunder.  Any such request shall be made in writing, on the form and subject to such requirements and restrictions as may be prescribed by the Administrative Committee for such purpose pursuant to Treasury regulations, at such

CONFIDENTIAL                                                          PFE ERISA 0002068

time in advance of the date payment would otherwise be made as may be required by the Administrative Committee. Within the Notice Period, the Administrative Committee shall supply a Participant or other Distributee entitled to receive an Eligible Rollover Distribution with a written explanation of the rollover rules and tax treatment applicable to his distribution.

10.06     Minimum Required Distribution. Each Participant shall receive, with respect to each calendar year during which and following the calendar year in which he attained age 70½, the minimum required distribution amount described under section 401(a)(9) of the Code and the regulations thereunder. In no event shall the first minimum required distribution be made later than the April 1 of the calendar year following the calendar year in which he attained age 70½. The amount of such distribution shall be determined in accordance with section 401(a)(9) of the Code and the regulations thereunder. With respect to distributions under the Plan made for calendar years beginning on or after January 1, 2002, the Plan will apply the minimum distribution requirements of Section 401(a)(9) of the Code in accordance with regulations under Section 401(a)(9) of the Code that were proposed on January 17, 2001. This amendment shall continue in effect until the end of the last calendar year beginning before the effective date of final regulations under Section 401(a)(9) of the Code or such other date as may be specified in guidance published by the Internal Revenue Service.

## ARTICLE XI

## WITHDRAWALS AND LOANS

11.01     Withdrawals. A Participant may withdraw amounts from his Account to the extent provided under subsections (a), (b), (c), (d), (e), or (f) of this Section. Any withdrawal shall be considered a distribution of a portion of the Participant's benefit and shall be paid in a single sum. A withdrawal shall be disregarded, however, for purposes of determining whether the Participant's Benefit Commencement Date has occurred. A Participant's request for a withdrawal must be made in writing within the 90-day period ending on the date the withdrawal is paid to the Participant. The request must specify, to the extent applicable, the Accounts from which the amount is to be withdrawn and must acknowledge the effect of such withdrawal on amounts otherwise distributable to the Participant or his Beneficiary. The amount of the withdrawal shall be divided proportionally among the Investment Vehicles in which the Accounts from which the withdrawal is to be made are invested. Withdrawals from Investment Vehicles other than the Common Stock Investment Account shall be made in cash. Withdrawals from the Common Stock Investment Account shall be made, as directed by the Administrative Committee, at its sole discretion, in cash, Company Stock, or a combination thereof. Withdrawals shall be made in accordance with the procedures established by the Administrative Committee.

CONFIDENTIAL                                                          PFE ERISA 0002069

(a) Withdrawals from Rollover Account.  A Participant may withdraw all or any portion of his Rollover Account at any time subject to such limits as  the Administrative Committee shall determine.

(b) Withdrawals from After-Tax Account.

(1)    Except as otherwise provided in paragraph (2), a Participant may withdraw all or any part of his After-Tax Account, provided that such withdrawal is satisfied by:

(A)    first distributing any After-Tax Contributions made before January 1, 1987; then

(B)    distributing any After-Tax Contributions made on or after January 1, 1987, along with a proportionate share of earnings on such amounts; and finally

(C)    distributing any remaining earnings in the After-Tax Account.

(2)    To the extent Matching Contributions were made on or after January 1, 1997 with respect to After-Tax Contributions, such After-Tax Contributions may not be withdrawn unless such amounts were held in the Plan for at least 24 consecutive months.

(c) Withdrawals from Matching Account.

(1)    Withdrawals After 3 Years of Participation.  A Participant who has been a Participant for three or more consecutive years and who has exhausted withdrawals of his After-Tax Account permitted under subsection (b), may request a withdrawal of all or any part of the vested portion of his Matching Account; provided, however, that if such withdrawal is made prior to a Participant's termination of employment with the Employer, the amount of such withdrawal shall be limited to amounts relating to Matching Contributions and Additional Contributions held in the Plan for at least 24 consecutive months.

(2)    Hardship Withdrawals of Matching Account.  A Participant may elect a withdrawal from the vested portion of his Matching Account in an amount necessary to alleviate an immediate and heavy financial need as determined under Sections 11.01(d)(3)(B) and (C) below.

(d) Withdrawals from Before-Tax Account.

(1)    Withdrawals on or after age 59½.  Except as provided in the next sentence, a Participant who has attained age 59½ may withdraw all or a portion of his Before-Tax Account at any time.  Notwithstanding the foregoing, a

CONFIDENTIAL                                                      PFE ERISA 0002070

Participant who was a participant in the Sugen Plan or the Pharmacia Plan who has attained age 59½ may withdraw all or a portion of his Account, other than, his ESOP Account, at any time.

        (2)      <u>Withdrawals After Termination of Employment</u>. A Participant may withdraw all or a portion of his Before-Tax Account at any time after his termination of employment with the Employer.

        (3)      <u>Hardship Withdrawals</u>.

        (A)      Generally, a Participant may elect a withdrawal from his (i) in the case of a Participant who formerly participated in the Pharmacia Plan, any of his Accounts (other than his ESOP Account), (ii) in the case of a Participant who formerly participated in the Sugen Plan, his Before-Tax Account or Rollover Account, and (iii) with respect to all other Participants, his Before-Tax Account in an amount necessary to alleviate an immediate and heavy financial need; provided, however, that he may not withdraw earnings credited to his Before-Tax Account that accrued after December 31, 1988.

        (B)      For purposes of this paragraph (3) and Section 11.01(c)(2), an immediate financial hardship is expenses incurred as a result of:

        (i)      medical expenses of the Participant, his spouse, children or dependents, as described in section 152 of the Code, that are deductible for federal income tax purposes under Code section 213(d);

        (ii)      the purchase (excluding mortgage payments) of a principal residence for the Participant;

        (iii)      the payment of tuition for the next 12 months of post-secondary education for the Participant, his spouse, children or dependents;

        (iv)      the need to prevent the eviction of the Participant from, or foreclosure on the mortgage of, the Participant's principal residence;

        (v)      the need to prevent the shut off of utilities, pay funeral expenses of an immediate family member, or pay personal tax levies.

        (C)      For purposes of this paragraph (3) and Section 11.01(c)(2), a withdrawal shall be deemed to be in the amount necessary to alleviate an immediate financial hardship if either:

        (i)      the Participant submits a written representation to the Administrative Committee which the Administrative Committee determines is sufficient to evidence as to the amount required to satisfy the immediate

CONFIDENTIAL

PFE ERISA 0002071

and heavy financial need and as to the unavailability of other assets, such as insurance, the liquidation of assets, cessation of Before-Tax and After-Tax Contributions, other distributions or nontaxable loans from the Plan or other qualified plans maintained by the Employer, or commercial loans or reasonable commercial loans; or

(ii)      the Participant has obtained all distributions, other than hardship withdrawals, and all nontaxable loans available to the Participant under all plans maintained by the Employer; provided, however, that, in such case the Participant shall be ineligible to have Before-Tax Contributions made on his behalf for the 12-month period following his receipt of the withdrawal and, with respect to the taxable year in which Before-Tax Contributions may again be made on the Participant's behalf, the dollar limit presented under Section 6.01 with respect to such taxable year shall be reduced by the amount of Before-Tax Contributions made on behalf of the Participant in the taxable year in which the withdrawal under this subsection (d) was made.

(e) Withdrawals from ESOP Accounts.  A Participant may not withdraw any portion of his ESOP Account.

(f) Statutory Distributions.  Generally, except as otherwise provided under subsections (a) through (d) above, a Participant's vested interest in his Account may not be distributed before the Participant's termination of employment with the Employer. Notwithstanding the foregoing, however, a Participant's vested interest shall be distributable upon the occurrence of any of the following events:

(1)      termination of the Plan without the establishment or maintenance of another defined contribution plan (other than an employee stock ownership plan, as defined in section 4975(e)(7) of the Code) which is a successor plan as determined under the applicable Treasury regulations;

(2)      the disposition by the Employer to an unrelated corporation of substantially all of the assets (within the meaning of section 409(d)(2) of the Code) used in a trade or business of the Employer if the Employer continues to maintain the Plan after the disposition and the unrelated corporation that purchases the assets does not maintain the Plan after the disposition, provided that the distribution may only be made with respect to Employees who continue employment with the corporation acquiring the assets; or

(3)      the disposition by an Employer to an unrelated entity of such Employer's interest in a subsidiary (within the meaning of section 409(d)(3) of the Code) if the Employer continues to maintain the Plan and such unrelated entity that purchases the subsidiary does not maintain the Plan after the disposition, but distribution may only be made with respect to Employees who continue employment with such subsidiary.

CONFIDENTIAL

PFE ERISA 0002072

11.02    Loans to Participants. The Administrative Committee may in its discretion cause the Plan to lend to any qualified Participant an amount, as requested by the Participant, from his Account, upon such terms as the Administrative Committee may see fit.

(a) Qualification for Loans. A Participant is eligible for a Plan loan if he is actively employed by the Employer at the time of the loan is made and he demonstrates, on the basis of uniform and nondiscriminatory rules and procedures established by the Administrative Committee, his ability to repay the loan with interest.

(b) Accounts Available for Loans. The amount lent to a Participant shall be debited from his Account in the following order:

(1) After-Tax Account;

(2) Discretionary Account;

(3) vested portion of Matching Account; and

(4) Before-Tax Account.

Neither a Participant's ESOP Account nor his Rollover Account may be used as a source for a loan. The amount lent from an Account shall be debited against all of the Investment Vehicles such that the amount of the loan debited from an Account is prorated among all of the Investment Vehicles in which the Account is invested on the basis of the proportion of the Account invested in each Investment Vehicle at the time the loan is made.

(c) Amount of Loan. The amount lent to any Participant shall not exceed the lesser of $50,000 or 50% of the amount of the Participant's vested interest in his Accounts, other than his Rollover Account. The minimum amount of any loan made to a Participant is $500, or such higher minimum amount that may be set by the Administrative Committee from time to time on a uniform and nondiscriminatory basis. No more than three loans may be outstanding at any time.

(d) Loan Term; Interest Rates. Each loan shall be repaid within five years from the date the loan is made, unless the loan proceeds are used to acquire a dwelling that is to be used as the Participant's principal residence, in which event the term of the loan shall be as determined by the Administrative Committee. Each loan shall bear a fixed rate of interest that is commercially reasonable, as determined by the Administrative Committee.

(e) Other Loan Requirements. The interest paid to the Trustee by the Participant on the loan shall be allocated to such Accounts and to the Account of no other Participant. The amount of any loan, including accrued interest, unpaid at the time a Participant or his Beneficiary becomes entitled to a distribution under Article XV

CONFIDENTIAL                                                      PFE ERISA 0002073

shall be deducted from the amount otherwise distributable to the Participant or Beneficiary. No note or other document evidencing a loan shall be negotiable or otherwise assignable.

(f) Elections. In order to be valid, a Participant's request for a loan must be made via a written, electronic or telephonic communication with the Administrative Committee or its delegate according to procedures established by the Administrative Committee. A request must be made within the 90-day period ending on the date the loan is made to the Participant. The request must specify the amount to be borrowed against each of his Accounts.

(g) Expense of Loan. The Administrative Committee may charge a reasonable loan processing fee as well as an annual loan administration fee for each year the loan is outstanding. Such fee shall be applied on a uniform and nondiscriminatory manner.

(h) Repayment. Loans shall be repaid in equal installments (not less frequently than monthly) through payroll withholding or, in the case of a Participant's unpaid authorized leave of absence or lay-off, by personal check. Loans shall become immediately due and payable upon a Participant's termination of employment with the Employer. Notwithstanding the foregoing, however, a Participant who is participating in the PRTLOA Program may continue to make loan payments during the period covered by the PRTLOA Program.

## ARTICLE XII

## SPECIAL PROVISIONS FOR TOP-HEAVY PLANS

12.01    Determination of Top-Heavy Status. The Plan shall be considered top-heavy for the Plan Year, if, as of the Determination Date:

(a) the Plan is not part of an Aggregation Group and the Key Employee Ratio, determined by substituting the "Plan" for the "Aggregation Group" each place it appears in Section 2.48, exceeds 60%, or

(b) the Plan is part of an Aggregation Group and the Key Employee Ratio of such Aggregation Group exceeds 60%;

The Plan shall be deemed super top-heavy as to any Plan Year if, as of the Determination Date with respect to such Plan Year, the conditions of subsections (a) or (b) hereof are met with "90%" substituted for "60%" therein.

12.02    Minimum Contributions. For any Plan Year in which the Plan is determined to be top-heavy or super top-heavy within the meaning of Section 12.01, the Plan shall provide a minimum contribution allocation for each Participant who is a Non-Key Employee (other than a Participant whose terms and conditions of employment are

44

CONFIDENTIAL

PFE ERISA 0002074

governed by a collective bargaining agreement with respect to which there is evidence that retirement benefits were the subject of good faith bargaining) and has not separated from service with the Employer by the end of the Plan Year. The amount allocated shall not be less than 3% of the Participant's Testing Compensation; provided, however, that the percentage of Testing Compensation allocated shall not exceed the highest contribution percentage made or required to be made (based on both contributions and Before-Tax Contributions) on behalf of any Key Employee, taking into account contributions under all plans in the Plan's Aggregation Group.

12.03    Minimum Vesting.  With respect to any Plan Year beginning before January 1, 2000, in which the Plan is determined to be top-heavy or super top-heavy pursuant to Section 12.01, the vested interest of a Participant who is credited with at least one Hour of Service after the Plan becomes top-heavy or super top-heavy in his ESOP Account and Matching Account shall be determined in accordance with the following schedule:

| Full Years of Service | Vested Interest |
|---|---|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 100% |

If the Plan ceases to be top-heavy, vesting in such Accounts shall once again be determined in accordance with Section 8.01(b); provided, however, that any vested interest of a Participant shall remain vested, and further provided that a Participant credited with three or more Years of Service shall be given the option of remaining under the vesting schedule set forth in this Section 12.03.

12.04    Adjustments to Maximum Limits on Benefits and Contributions.  For any Plan Year in which the Plan is determined in accordance with Section 12.01, to be a top-heavy plan or a super top-heavy plan, the definitions of "defined contribution fraction" and "defined benefit fraction" for purposes of the limitation on benefits referenced in Section 6.05 shall be modified as required under section 416 of the Code. Notwithstanding the foregoing, no adjustment shall be made to such fractions if the Plan is not super top-heavy and Section 12.02 is applied by substituting "4%" for "3%."

## ARTICLE XIII

## PLAN ADMINISTRATION

13.01    Fiduciary Responsibility.  The Plan shall be administered by the following three committees:

CONFIDENTIAL

PFE ERISA 0002075

(a) <u>Global Employee Benefits Oversight Committee</u>.  Generally, the Global Employee Benefits Oversight Committee shall be responsible for proposals related to the modifications of the Plan which result in significant increases in the Company's contributions to the Plan.  The Global Employee Benefits Oversight Committee's responsibilities shall include:

(1)      appointment of the Administrative Committee and Investment Committee;

(2)      monitoring of the performance of the Administrative Committee and the Investment Committee; and

(3)      annual review of global investment performance.

(b) <u>Administrative Committee</u>.  Unless otherwise determined by the Global Employee Benefits Oversight Committee, the Administrative Committee shall be the Administrative Committee – U.S. Plans.  Generally, the Administrative Committee shall be the Plan's "named fiduciary" and "administrator," as those terms are defined by ERISA, and its agent designated to receive service of process.  The Administrative Committee shall have the power to interpret and construe the provisions of the Plan, and to decide such questions as may rise in connection with the operation of the Plan, including interpretation of ambiguous Plan provisions, determination of disputed facts, and application of Plan provisions to unanticipated circumstances.  The determination of the Administrative Committee shall be subject to review only for abuse of discretion.  In addition, the Administrative Committee's responsibilities shall include:

(1)      overseeing the Plan's compliance with the reporting and disclosure requirements of the Code and ERISA; and

(2)      resolution of Participant disputes in claims, the making of factual determinations, and evaluation of domestic relations orders.

(c) <u>Investment Committee</u>.  Unless otherwise determined by the Global Employee Benefits Oversight Committee, the Investment Committee shall be the Global Benefits Investment Committee.  The Investment Committee shall be responsible for all matters relating to the control and management of Plan assets, to the extent not assigned to the Trustee in the Trust agreement or other instrument.  The duties and responsibilities of the Investment Committee shall include, but shall not be limited to:

(1)      establishment of funding and expense policies, methods and strategies for the Plan;

(2)      annual review and evaluation of the Plan's funding status;

(3)      establishment of investment policies relating to the Plan;

CONFIDENTIAL

PFE ERISA 0002076

(4)    appointment, approval, and termination of the trustees, custodians, investment managers, investment consultants, actuaries, legal counsel, and other outside experts involved with the Plan;

(5)    arranging for and review of the annual financial audit of the Plan;

(6)    review, at least annually, of expenses of trustees, actuaries, investment managers, investment consultants, and any internal administrative costs being charged to the Plan; and

(7)    preparation of an annual report to the Global Employee Benefits Oversight Committee.

The Investment Committee shall be a "named fiduciary" as that term is defined by ERISA.

13.02    Appointment and Removal of Committees.  The appointment and removal of members of the Global Employee Benefits Oversight Committee shall be at the discretion of the Company's Board or the appropriate Committee of the Board.  The appointment and removal of members of all other committees shall be determined by the Global Employee Benefits Oversight Committee or the Board.

13.03    Compensation and Expenses of the Committees.  Members of the Global Employee Benefits Oversight Committee, Administrative Committee, and the Investment Committee shall serve without compensation.  All ordinary and necessary expenses of the Global Oversight Committee, Administrative Committee and the Investment Committee shall be paid from the Plan unless paid by the Company.

13.04    Committee Procedures.  The Global Employee Benefits Oversight Committee, Administrative Committee, and Investment Committee may enact such rules and regulations for the conduct of their business and for the administration of the Plan, as they may deem desirable.  The Global Employee Benefits Oversight Committee, Administrative Committee, and Investment Committee may act either at meetings at which a majority of members are present or by a writing signed by a majority of its members without the holding of a meeting.  Records shall be kept of the meetings and actions of the Global Employee Benefits Oversight Committee, Administrative Committee, and Investment Committee.  No Global Employee Benefits Oversight Committee, Administrative Committee, or Investment Committee member who is a participant in the Plan shall vote upon, or take an active role in resolving, any question affecting only his benefits.

13.05    Indemnification of the Committee.  Each member of the Global Employee Benefits Oversight Committee, Administrative Committee, and Investment Committee shall be indemnified by the Company against costs, expenses and liabilities (other than amounts paid in settlement to which the Company does not consent)

CONFIDENTIAL

PFE ERISA 0002077

reasonably incurred by him in connection with any action to which he may be a party by reason of his service as a member of such committee except in relation to matters as to which he shall be adjudged in such action to be personally guilty of negligence or willful misconduct in the performance of his duties.  The foregoing right to indemnification shall be in addition to such other rights as the member may enjoy as a matter of law or by reason of insurance coverage of any kind, but shall not extend to costs, expenses or liabilities otherwise covered by insurance or that would be so covered by any insurance then in force if such insurance contained a waiver of subrogation.  Rights granted hereunder shall be in addition to and not in lieu of any rights to indemnification to which the member of the Global Employee Benefits Oversight Committee, Administrative Committee, or Investment Committee may be entitled pursuant to the bylaws of the Company.  Service on the Global Employee Benefits Oversight Committee, Administrative Committee, or Investment Committee shall be deemed in partial fulfillment of the member's function as an employee, officer, or director of the Company, as applicable.

13.06    Exclusive Benefit Rule.  The Global Employee Benefits Oversight Committee, Administrative Committee, and Investment Committee shall administer the Plan for the exclusive benefit of participants and their beneficiaries.

13.07    Consultants.  The Global Employee Benefits Oversight Committee, Administrative Committee, and Investment Committee may, and to the extent required for the preparation of reports shall, employ accountants, actuaries, attorneys and other consultants or advisors.  The fees charged by such accountants, actuaries, attorneys and other consultants or advisors shall represent reasonable compensation for services rendered and shall be paid from the Plan unless paid by the Employers.

13.08    Payment of Plan Expenses.  The expenses incurred by the Employer in connection with the operation of the Plan, including, but not limited to, expenses incurred by reason of the engagement of professional assistants and consultants, shall be expenses of the Plan and shall be payable by the Plan.  These expenses may be paid first from Plan forfeitures.  The Employer shall have the option, but not the obligation, to pay any such expenses, in whole or in part, and, by so doing, to relieve the Plan from the obligation of bearing such expenses.  Payment of any such expenses by the Employer on one occasion shall not bind the Employer to pay any similar expenses on any subsequent occasion.

13.09    Method of Handling Plan Funds.  All payments to the Fund shall be made by the employee of the Employer charged with that responsibility by the Board. All payments from the Fund shall be made by the Trustee.

13.10    Delegation and Allocation of Responsibility.  To the extent permitted under the terms of the Trust Agreement, the Trustee may, by unanimous action in writing, delegate or assign any of its responsibilities for administering the Plan to one or more individuals or entities.  In the event of any such delegation or allocation, the Trustee shall establish procedures for the thorough and frequent review of the

1-PH/1128363.11

48

CONFIDENTIAL

PFE ERISA 0002078

performance of such duties.  Persons to whom responsibilities have been delegated may not delegate to others any discretionary authority or discretionary control with respect to the management or administration of the Plan.

13.11    Claims Procedure.  The Administrative Committee shall administer a claims procedure as follows:

(a) Initial Claim.  A Participant or Beneficiary who believes himself entitled to benefits hereunder may claim those benefits by submitting to the Manager of Retirement and Savings Plans of the Company a written notification of his claim of right to such benefits.

(b) Procedure for Appeal.  In the event that the claim is wholly or partially denied, the Manager of Retirement and Savings Plans of the Company shall, within 90 days (or in special cases, and upon prior notice to the claimant, 180 days) of receipt of the claim, inform the Participant or Beneficiary in writing or electronically of the reason or reasons for the denial, the specific reference to the Plan provisions on which the denial was based, any additional information that may be necessary to perfect the claim, with reasons therefore and the procedure for reviewing the denial of the claim and the time limits applicable to such procedures, and, for claims filed on or after January 1, 2002, a statement of the claimant's right to being a civil action under section 502(a) of ERISA following an adverse benefit determination on review.  In such case, the Participant, Beneficiary or his representative shall have the opportunity to appeal to the Administrative Committee -- U.S. Plans for review thereof by requesting such review in writing to the Administrative Committee -- U.S. Plans within 60 days of notification by the Administrative Committee -- U.S. Plans of the claim denial, and shall set forth all of the facts upon which the appeal is based.  The Participant, Beneficiary or his representative shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits.  Appeals not timely filed shall be barred.

(c) Decision on Appeal.  No later than 60 days after its receipt of the request for review, the Administrative Committee -- U.S. Plans shall render a decision in writing or electronically, stating specific reasons therefor, citing specific Plan references, indicating that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claim for benefits, and, for claims filed on or after January 1, 2002, a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review.  If special circumstances require extension, and upon prior notice to the claimant, the Administrative Committee -- U.S. Plans decision may be given within 120 days after receipt of the request for review.

CONFIDENTIAL

PFE ERISA 0002079

## ARTICLE XIV

## AMENDMENT AND TERMINATION

14.01    Amendment.  The Plan may be amended at any time and from time to time by or pursuant to a formal written action of the Compensation Committee of the Board or the Global Employee Benefits Oversight Committee or the Administrative Committee subject to the following restrictions:

(a) The Administrative Committee may not make any amendment to the Plan which would result in an increase of more than a specified amount of Plan expenses or contributions per Plan Year, as specified by the Board or the Global Employee Benefits Oversight Committee; and

(b) Any amendment to the Plan made by the Global Oversight Committee that results in a significant increase in Plan expenses or calculations must also be approved by the Compensation Committee of the Board.

No amendment to the Plan shall be effective to the extent that it has the effect of decreasing a Participants' Account balance or eliminating an optional form of benefit payment for benefits attributable to service before the later of the date the amendment is adopted or the date it becomes effective, except to the extent permissible under section 411(d)(6) of the Code and the regulations thereunder.  If the vesting schedule of the Plan is amended, the nonforfeitable interest of a Participant in his Account balance, determined as of the later of the date the amendment is adopted or the date it becomes effective, shall not be less than the Participant's nonforfeitable interest in his Account balance determined without regard to such amendment.  If the Plan's vesting schedule is amended, each Participant with three or more Years of Service may elect to have the nonforfeitable percentage of his Account balance computed under the Plan without regard to such amendment.  The Participant's election shall be made within 60 days after the latest of (i) the date the amendment is adopted, (ii) the date the amendment becomes effective, or (iii) the date the Participant is given written notice of the amendment by the Company or the Trustee.

14.02    Termination or Partial Termination.

(a) Right to Terminate Reserved.  While the Company intends to continue the Plan indefinitely, it reserves the right to terminate the Plan at any time by formal written action of the Board; provided that such termination shall not be effective until a date which is at least 30 days after the Company delivered written notice of the termination to the Global Employee Benefits Oversight Committee, the participating Employer, and the Trustee.  Further, any Employer may at any time for any reason withdraw from participation in the Plan, in whole or in part, upon the first to occur of the following:

CONFIDENTIAL                                                    PFE ERISA 0002080

(b) The date it is terminated by the Board of that Employer if 30 days advance written notice of the termination is given to the Global Employee Benefits Oversight Committee, the other Employers, and the Trustee.

(c) The date that Employer is judicially declared bankrupt or insolvent.

(d) The dissolution, merger, consolidation or reorganization of that Employer, or the sale by that Employer of all or substantially all of its assets, except that:

(1)    In any such event arrangements may be made with the consent of the Company whereby the Plan will be continued by any successor to that Employer or any purchaser of all or substantially all of its assets, in which case the successor or purchaser will be substituted for that Employer under the Plan, and such substitution shall not in any way cause a termination of the Plan or interrupt or affect any Participant's Years of Service; and

(2)    If any Employer is merged, dissolved or in any way reorganized into, or consolidated with, any other Employers, the Plan as applied to the former Employer will automatically continue in effect without a termination thereof.

Notwithstanding the foregoing, if any of the events described above should occur that otherwise would result in the termination of the Plan as to an individual Employer but some or all of the Participants employed by that Employer are transferred to employment with one or more of the other Employers coincident with or immediately after the occurrence of such event, the Plan as applied to those Participants will automatically continue in effect without a termination thereof.

(e) Treatment of Participants Upon Termination.  If the Plan is terminated or partially terminated, Account balances of the Participants affected thereby shall immediately vest and be nonforfeitable, to the extent funded.  No employees of such Employer who are not then Participants may thereafter be admitted to the Plan, and the Employer shall make no further contributions to the Fund.

(f) Liability of Employer.  The Employer shall have no liability in respect of payment under the Plan, except to pay over to the Trustee the contributions otherwise required under the Plan, and each Participant or his Beneficiary shall look solely to the Trust for distribution of benefits under the Plan.

(g) Successor Employers.  Unless this Plan is terminated earlier, a successor employer of the Employees of the Employer may continue this Plan and Trust by joining with the Trustee in executing an appropriate supplemental agreement. Such successor employer shall ipso facto succeed to all the rights, powers, and duties of the Employer hereunder.  In such event, the Plan shall not be deemed to have terminated and the employment of any Employee who is continued in the employ of

CONFIDENTIAL

PFE ERISA 0002081

such successor Employer shall be deemed not to have been terminated or severed for any purposes hereunder.

## ARTICLE XV

## MISCELLANEOUS

15.01    <u>Merger, Consolidation or Transfer of Assets or Liabilities</u>.  The Company reserves the right to merge or consolidate the Plan with any other defined contribution plan qualified under section 401(a) of the Code, or to transfer Plan assets or liabilities to any other qualified defined contribution plan, provided that the amount standing to the credit of each Participant's Accounts immediately after any such merger, consolidation or transfer of assets or liabilities shall be at least equal to the amount standing to the credit of the Participant's Accounts immediately before such merger, consolidation or transfer, determined as if the Plan had then terminated.

15.02    <u>Limited Purpose of Plan</u>.  The establishment or existence of the Plan shall not confer upon any Employee the right to be continued as an Employee.  The Employer expressly reserves the right to discharge any Employee whenever in its judgment its best interests so require.

15.03    <u>Nonalienation</u>.  No benefit payable under the Plan shall be subject in any manner to anticipation, assignment, or voluntary or involuntary alienation. This Section 15.03 shall not preclude the Trustee from complying with the terms of (a) a Qualified Domestic Relations Order, (b) a federal tax levy made pursuant to section 6331 of the Code, (c) subject to section 401(a)(13) of the Code, a judgement relating to the Participant's conviction of a crime involving the Plan, or (d) subject to section 401(a)(13) of the Code, a judgment, order, decree, or settlement agreement between the Participant and the United States Department of Labor or the Pension Benefit Guaranty Corporation relating to a violation (or an alleged violation) of part 4 subtitle B or Title I of ERISA.

15.04    <u>General Distribution Requirements</u>.    All distributions under the Plan shall be determined and made in accordance with the minimum distribution and incidental death benefit requirements of the regulations under section 401(a)(9) of the Code.

15.05    <u>Facility of Payment</u>.  If the Administrative Committee, in its sole discretion, deems a Participant or Beneficiary who is entitled to receive any payment hereunder to be incompetent to receive the same by reason of age, illness, infirmity or incapacity of any kind, the Administrative Committee may direct the Trustee to apply such payment directly for the benefit of such person, or to make payment to any person selected by the Administrative Committee to disburse the same for the benefit of the Participant or Beneficiary.  Payments made pursuant to this Section shall operate as a discharge, to the extent thereof, of all liabilities of the Employer, the Trustee, the

CONFIDENTIAL                                    PFE ERISA 0002082

Administrative Committee and the Fund to the person for whose benefit the payments are made.

     15.06    <u>Impossibility of Diversion</u>.  All Plan assets shall be held as part of the Fund until paid to satisfy allowable Plan expenses or to provide benefits to Participants or their Beneficiaries.  It shall be impossible, unless Sections 4.06 or 15.08 applies, for any part of the fund to be used for, or diverted to, purposes other than the exclusive benefit of the Participants or their Beneficiaries or the payment of the reasonable expenses of the administration of the Plan or of the Fund or both, and the Fund shall continue for such time as may be necessary to accomplish the purposes for which it was established.

     15.07    <u>Unclaimed Benefits</u>.  Each Participant and each Beneficiary must notify the Administrative Committee from time to time of his post office address and each change of post office address.  Any communication, statement, or notice addressed to a Participant or Beneficiary at his last post office address filed with the Administrative Committee or, if no last post office address is filed with the Administrative Committee, at his last post office address as shown on the Pharmacia & Upjohn, Inc.'s records, will be binding on the Participant and his Beneficiary for all purposes of the Plan.  In the event that the Administrative Committee, after making a good faith effort, is unable to locate a Participant or other individual entitled to payment under the Plan within eighteen months following the date such missing payee was to commence receiving payment under the Plan, the entire amount allocated to such Participant's Account shall be forfeited and used to pay expenses of the Plan or to offset future employer contributions.  If, after such forfeiture, the affected Participant or Beneficiary later claims his benefit, such benefit shall be restored and distributed to such Participant or Beneficiary without interest or earnings from the date payment was to commence.

     15.08    <u>Contingent Effectiveness of Plan Amendment and Restatement</u>.  The effectiveness of this amendment and restatement of the Plan shall be subject to and contingent upon a determination by the District Director of the Internal Revenue Service that the Plan and Trust continue to be qualified under the applicable provisions of the Code, so that the contributions by the Employer are deductible when made and the Trust continues to be exempt from federal income tax.  If the District Director determines that the amendment and restatement adversely affect the existing qualified status of the Plan and Trust, then, upon notice to the Trustee, the Board shall have the right further to amend the Plan or to rescind the amendment and restatement.

     15.09    <u>Controlling Law</u>.  The Plan shall be construed and enforced in accordance with the laws of the State of New Jersey to the extent not preempted by federal law, which shall otherwise control.

1-PH/1128363.11

53

CONFIDENTIAL

PFE ERISA 0002083

## APPENDIX A

### MERGER EMPLOYEE TRANSITION ASSISTANCE ("META") PROGRAM

The purpose of this Appendix A is to clarify the special provisions which apply under the Plan to certain Participants eligible for certain benefits under the Employer's META Program. The META Program shall consist of the PRTLOA Program, administered in part through the Plan, and the Separation Pay Program, administered outside the Plan.

This Appendix A shall apply only to Covered META Participants and Covered PRTLOA Participants. A Covered META Participant is a Participant who was a participant in the Pharmacia Plan who during the period beginning December 1, 1995 and ending December 31, 1997 has been designated as a Participant in the PRTLOA Program. A Covered PRTLOA Participant is a Participant who was a participant in the Pharmacia Plan who during the period beginning December 1, 1995 and ending December 31, 1997 (i) has attained at least age 50 and has achieved a minimum of 65 points (counting age plus years and months of service as an Employee of the Employer) by the end of his 60-day period of active employment with the Employer under the META Program; and (ii) is participating in the PRTLOA Program.

Covered META Participants and Covered PRTLOA Participants described above shall be entitled to the same rights to commencement and method of payment of his Account under the Plan as any other Participant in accordance with Article X of the Plan; provided, however, that once participating in the PRTLOA Program, a Covered PRTLOA Participant (i) shall not have the right to any additional loans under the Plan, and shall be required to repay outstanding loans in accordance with the Section 11.02(h) of the Plan; and (ii) shall not have the right to any Hardship Withdrawals or withdrawals upon attainment of age 59½. Notwithstanding the foregoing, a Covered META Participant or a Covered PRTLOA Participant described in this Appendix A shall be permitted to repay any outstanding loans until he ceases to be covered under the META Program. Any Matching Contributions to which a Covered PRTLOA Participant is entitled pursuant to Article IV of the Plan shall be timely contributed to his Matching Account based on his Participant Compensation earned during the Plan Year as a Covered Employee, prior to his entering the PRTLOA Program.

Notwithstanding any provisions in the Plan to the contrary, a Covered META Participant shall be 100% vested in his Account under the Plan if he should separate from service from the Employer under the terms of the META plan document.

Any separation pay provided to a Covered META Participant or a Covered PRTLOA Participant under the Employer's Separation Pay Program shall be provided and administered by the Employer, outside the Plan. The amount and payment of any separation pay shall be determined in accordance with the Separation Pay Program, and payment of any separation pay in no event shall be deemed a distribution from the Plan.

CONFIDENTIAL

PFE ERISA 0002084

Notwithstanding the foregoing provisions of this Appendix A, payment or provision through the Plan of a Covered META Participant's benefits under the Plan or a Covered PRTLOA Participant's benefits under the Plan in accordance with the META Program shall be subject to the requirement that the META Program comply with applicable provisions of the law, including the Code, and the Employer expressly reserves the right to modify such benefits in order to comply with such provisions.

CONFIDENTIAL

PFE ERISA 0002085